ADAMS, Justice.
Dr. Thomas H. Williams III petitions this Court to issue a writ of mandamus requiring the trial court to vacate an order compelling arbitration of a dispute between himself and Russell Construction of Alabama, Inc.
Williams, a dentist in Montgomery, contracted in 1988 with J. Harold Nichols and Russell Construction of Alabama, Inc. (hereinafter “Russell” or “Russell Construction”), to build an office building for his Montgomery dental practice. Upon substantial completion of the building in April 1989, Williams moved into the office building. He alleges that upon moving in he began to notice serious problems with the structure: “headers separated over the hallway; backsplash pulled loose from the wall; windows leaking; some windows needed re-caulking; cracks in the walls; marble cracked in the bathroom; front door warping; brick porch and steps cracked; defective paint; cracks in the driveway; and electrical surges and other problems.”
It appears that Russell and the architect were notified of the alleged defects as soon as Williams noticed them after moving into the building. In addition, Russell was notified in writing of the alleged defects in March 1990. The dispute was never submitted by Russell to the architect for resolution, as required by the contract as a condition precedent to making a request for arbitration. In fact, Williams personally negotiated with Russell’s insurer for several months; no agreement was reached between the parties; and Williams sued Russell and Nichols in January 1991. In February 1991, Russell filed its motion to compel arbitration. In their petition, counsel for Williams contend that the trial court erred in issuing an order to compel arbitration of the dispute, arguing that submission of the dispute to the architect was a condition precedent to arbitration. Russell’s failure to submit the dispute to the architect for resolution, Williams argues, constituted a waiver of the right to force arbitration.
“First, we address our scope of review. This is a mandamus petition, and this Court has said many times that ‘[m]anda-mus is an extraordinary remedy, which should be granted only when there is a clear showing that the trial court abused its discretion.’ Ex parte Lang, 500 So.2d 3, 5 (Ala.1986). See, also, Ex parte Hartford Ins. Co., 394 So.2d 933, 936 (Ala.1981), wherein this Court stated that ‘[m]andamus itself is an extraordinary *72 remedy which should only be granted when there is a clear showing that the trial court abused its discretion and exercised it in an arbitrary or capricious manner.’ ”
Ex parte McKinney, 515 So.2d 693, 696 (Ala.1987). In considering whether the trial court abused its discretion, we must consider the following pertinent provisions of the contract between Russell Construction and Williams:
“10.1 The Architect will provide administration of the Contract and will be the Owner’s representative (1) during construction, (2) until final payment is due and (8) with the Owner’s concurrence, from time to time during the correction period described in Paragraph 18.1.
[[Image here]]
“10.5 The Architect will interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect will make initial decisions on all claims, disputes or other matters in question between the Owner and Contractor, but will not be liable for results of any interpretations or decisions rendered in good faith. The Architect’s decisions in matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents. All other decisions of the Architect, except those which have been waived by making or acceptance of final payment, shall be subject to arbitration upon the written demand of either party.
[[Image here]]
“10.8 All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract, or the breath [sic] thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as required under Paragraph 10.5. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the architect or any of the Architect’s employees or consultants. The agreement herein among the parties to the Agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.”
(Emphasis added.) In making a determination to compel arbitration, the trial court found that the condition precedent to arbitration was in effect only during the period of time when the architect was the owner’s representative. Paragraph 10.1 specifies the architect as the Owner’s representative “(1) during construction, (2) until final payment is due, and (3) with the Owner’s concurrence, from time to time during the correction period described in Paragraph 18.1.” Paragraph 18.1 describes the correction period as follows:
“18.1 The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, *73 installed or completed, and shall correct any Work found to be not in accordance with the requirements of the Contract Documents within a period of one year from the date of Substantial Completion of the Contract or by terms of an applicable special warranty required by the Contract Documents. The provisions of this Article 18 apply to Work done by Subcontractors as well as to Work done by direct employees of the Contractor.”
Williams moved into the building, noticed defects therein, and notified Russell and the architect of the alleged defects. He thereafter submitted a list of alleged defects to Russell, in March 1990. The dispute was never submitted to the architect, even though Russell knew of the dispute and could have submitted it to the architect. There is no doubt that the conflict arose within one year following substantial completion of the contract and that Williams notified Russell of the alleged defects well within that year. Russell simply failed to submit the dispute to the architect as provided in the contract. Pursuant to the provisions of the contract, failure to submit the dispute to the architect constituted a failure to meet the contractual condition precedent to arbitration.
For the foregoing reasons, the petition for the writ of mandamus is hereby granted.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.