748 N.W.2d 367 (2008)
275 Neb. 674
GOOD SAMARITAN COFFEE COMPANY, a Nebraska Corporation, Appellee,
v.
LaRUE DISTRIBUTING, INC., a Nebraska Corporation, Doing Business as LaRue Coffee, et al., Appellants.
No. S-07-300.
Supreme Court of Nebraska.
May 9, 2008.
*369 John C. Nimmer, Omaha, and Michael T. Levy for appellants.
Mark A. Weber and Kylie A. Wolf, of Walentine, O'Toole, McQuillan & Gordon, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Good Samaritan Coffee Company (Good Samaritan) filed a complaint against the defendants, alleging breach of contract and tortious interference with a business relationship. The contract at issue contained an arbitration clause. More than 3 years after Good Samaritan filed its original complaint, the defendants filed a motion to stay the case and compel arbitration. The district court denied the defendants' motion, finding that the defendants had waived their right to arbitration by actively litigating the present case. The primary issue presented in this appeal is whether the question of waiver based on litigation activity should be decided by a court or an arbitrator. Because the district court correctly determined that this particular waiver question should be decided by a court rather than an arbitrator, we affirm.

FACTS
Good Samaritan is located in Omaha and Fremont, Nebraska, and is involved in the distribution of "green" or unprocessed coffee beans. Good Samaritan entered into *370 several "`Green Coffee Contracts'" with LaRue Distributing, Inc., doing business as LaRue Coffee, wherein Good Samaritan agreed to provide coffee beans to LaRue Distributing.
The record reflects that in order for Good Samaritan to meet the requirements of these contracts, it must "purchase ... green, raw, unprocessed coffee beans from sources outside of the continental United States" and have the beans shipped to Nebraska. Once Good Samaritan receives the beans, the beans are "roasted, blended[,] processed[,] and packaged and sold to LaRue Coffee," which in turn sells the products to various customers in other states.
Each of the "`Green Coffee Contracts'" contained a provision incorporating the terms and conditions of a separate contract entitled "Green Coffee Association Contract Terms and Conditions." This latter contract contains a section relating to the arbitration of disputes. The section provides in relevant part:
All controversies relating to, in connection with, or arising out of this contract... shall be settled by arbitration in accordance with the "Rules of Arbitration" of the Green Coffee Association.... Arbitration is the sole remedy hereunder, and it shall be held in accordance with the law of New York State, and judgment of any award may be entered in the courts of that State, or in any other court of competent jurisdiction.
With regard to "Time Limits for Arbitration" the contract provides that "[a]ll technical arbitrations must be filed within one (1) year of the date that the controversy arose."
In a letter dated May 28, 2002, LaRue Distributing terminated its relationship with Good Samaritan. On December 16, 2003, Good Samaritan filed a complaint against LaRue Distributing; Midwest Custom Roasting, Inc.; and Veriyn L'Heureux and Mark Wunderlich, individuals who are principals in LaRue Distributing and Midwest Custom Roasting (collectively LaRue). In its complaint, Good Samaritan alleged breach of contract and tortious interference with a business relationship. On April 7, 2004, Good Samaritan filed an amended complaint, attaching the terms-and-conditions contract.
LaRue filed an answer and counterclaim on May 10, 2004, and filed an amended answer and counterclaim on March 6, 2006. LaRue did not assert the right to compel arbitration as an affirmative defense in either of its answers. In its counterclaim, LaRue sought a judgment against Good Samaritan for $19,000 that Good Samaritan allegedly owed LaRue. On January 5, 2007, nearly 3 years after Good Samaritan filed its original complaint, LaRue filed a motion to stay trial and compel arbitration.
At the hearing on LaRue's motion to stay trial and compel arbitration, counsel for LaRue asked the court "to take judicial notice of the pleadings in this matter" and of the exhibits attached to the pleadings. In response, the judge stated that
the [c]ourt will also note that at a motion for partial summary judgment [hearing,] the [c]ourt took judicial notice of the [c]ourt file at that time, including the pleadings; and therefore, to the extent... a record is being made, the [c]ourt will again take judicial notice of the [c]ourt file.
Following the hearing, the district court entered an order denying LaRue's motion to stay trial and compel arbitration.
In so doing, the court found that a court, rather than an arbitrator, had authority to determine whether a party has waived its right to arbitration. The court then determined that under the facts of this case, *371 LaRue had waived its right to arbitration. The court noted that since the time Good Samaritan filed its complaint, LaRue had exchanged pleadings, filed a counterclaim, engaged in years of discovery, and filed and received a ruling on its own motion for partial summary judgment. The court explained that LaRue's conduct in this case evidenced LaRue's "intent to litigate this matter before the [c]ourt in lieu of arbitration." LaRue appealed.

ASSIGNMENT OF ERROR
LaRue's sole assignment of error is that the district court erred in denying its motion to stay trial and compel arbitration.

STANDARD OF REVIEW
Whether a stay of proceedings should be granted and arbitration required is a question of law.[1] When reviewing questions of law, this court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[2]
The legal determination of waiver of arbitration is reviewed de novo, and the factual findings underlying that ruling are reviewed for clear error.[3]

ANALYSIS

Federal Arbitration Act Applies to Contracts at Issue.
We must first address whether the Federal Arbitration Act[4] (FAA) applies to this case. The FAA created a body of federal substantive law that applies to certain arbitration agreements.[5] The FAA applies to a contract "evidencing a transaction involving commerce."[6] "Commerce" as defined in the FAA includes "commerce among the several States."[7] The U.S. Supreme Court has given the FAA an expansive scope by broadly construing the phrase "`a contract evidencing a transaction involving commerce.'"[8]
The Court has held that the phrase "`involving commerce'" requires a broad interpretation in order to give effect to the FAA's basic purpose, which is to put arbitration provisions on the same footing as a contract's other terms.[9] The Court has further explained that "the word `involving,' like `affecting,' signals an intent to exercise Congress' commerce power to the full."[10] The statutory phrase "`evidencing a transaction'" has been construed by the Court to include transactions involving interstate commerce even where the parties did not contemplate an interstate commerce connection.[11]
*372 Given this broad interpretation of the phrase "involving commerce" in 9 U.S.C. § 2, it is clear that the contracts at issue in this case come within the scope of the FAA. The undisputed evidence in the record reflects that in order for Good Samaritan to meet its contractual obligations to LaRue, Good Samaritan had to purchase coffee beans from sources outside of the continental United States. And once the coffee beans were purchased, the beans were shipped to Good Samaritan in Nebraska, where Good Samaritan processed and sold the beans to LaRue. Thus, the FAA applies and questions relating to LaRue's motion to compel arbitration implicate federal law.

Court Shall Decide Issue of Waiver Based on Litigation-Related Conduct.
Next, we address whether a court or an arbitrator should decide if a party has waived its right to arbitrate when the waiver allegation is based on that party's litigation-related activity. The U.S. Supreme Court, in Howsam v. Dean Witter Reynolds, Inc.,[12] has set forth the rules that govern the allocation of functions between a court and an arbitrator. In that case, the Court held that the question whether an arbitration claim was barred by a 6-year limitations period embedded in the arbitration rules under which the parties had agreed to arbitrate was an issue for the arbitrator and not for the court.[13] The Court acknowledged that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the `question of arbitrability' is `an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[14]
The Court began its analysis by discussing the role of judges in resolving issues related to arbitration. The Court stated that "`question[s] of arbitrability,'" which are presumptively for the court to decide, are limited to gateway disputes that the
contracting parties would likely have expected a court to have decided ..., where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.[15]
The Court noted that at least two types of question were presumptively for a court to decide: first, "whether the parties are bound by a given arbitration clause" and second, "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."[16]
On the other hand, "`"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide."[17] "So, too," the Court continued, "the presumption is that the arbitrator should decide `allegation[s] of waiver, delay, or a like defense to arbitrability.'"[18] The Court stated that these are the types of question that "parties would likely expect that an arbitrator would decide."[19]
*373 The Court concluded that the applicability of the 6-year limitations rule was a matter "presumptively for the arbitrator, not for the judge."[20] The Court noted that the time limit rule in Howsam "closely resembles the gateway questions that th[e] Court has found not to be `questions of arbitrability.'"[21] The Court explained that the arbitrators were "comparatively more expert about the meaning of their own rule" and were "comparatively better able to interpret and to apply" the rule and that therefore, it was "reasonable to infer that the parties intended the agreement to reflect that understanding."[22] Moreover, the Court reasoned that a goal of arbitration and judicial systems alike is "to secure a fair and expeditious resolution of the underlying controversy."[23] And a law assuming an expectation that aligns decisionmakers with comparative expertise will further this goal.[24]
In the present case, LaRue contends, relying on the Court's statements relating to waiver in Howsam, that Good Samaritan's waiver defense should be resolved by an arbitrator and not a court. Viewed in isolation, the Court's statement in Howsam that "the presumption is that the arbitrator should decide `allegation[s] of waiver, delay, or a like defense to arbitrability'" does provide general support for LaRue's position here.[25] However, since the Court's decision in Howsam, several courts have squarely addressed the issue now raised by LaRue in the present case. And these courts have persuasively concluded that when this language from Howsam is properly considered within the context of the entire opinion, it is clear that the Court was referring only to waiver, delay, or like defenses arising from noncompliance with contractual conditions precedent to arbitration, such as the particular time limit rule at issue in Howsam, and not to claims of waiver based on active litigation in courts, as is the situation in the present case.[26]
In finding that the question of waiver based on litigation conduct is a decision presumptively for a judge rather than an arbitrator, courts have noted that this type of determination has historically been made by the courts. For example, both the First and Third Circuit Courts of Appeal have explained that questions of waiver based on litigation conduct have long been decided by the courts. The First Circuit observed, in Marie v. Allied Home Mortgage Corp.,[27] that the "overwhelming weight of pre-Howsam authority ... held that waiver due to litigation conduct was generally for the court and not for the arbitrator" to decide. And in Ehleiter v. Grapetree Shores, Inc.,[28] the Third Circuit similarly concluded that "the Supreme Court did not intend its pronouncements in Howsam ... to upset the `traditional rule' *374 that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court."
The statutory language of the FAA provides further support for the holding that waiver based on litigation conduct be decided by a court, rather than an arbitrator. In the present case, LaRue filed a motion to stay trial and compel arbitration pursuant to 9 U.S.C. § 3. Under 9 U.S.C. § 3, a court is only permitted to stay a court action pending arbitration if "the applicant for the stay is not in default in proceeding with such arbitration." And in this context, courts have generally interpreted the term "default" to include waiver.[29] Thus, in cases where a stay is requested, the plain language of 9 U.S.C. § 3 appears to place a statutory command on courts to decide the issue of waiver themselves.[30]
Several other reasons persuade us to find that a court, as opposed to an arbitrator, should decide waiver issues due to litigation-related activities. As already noted, the Supreme Court in Howsam stressed the importance of considering the "comparative expertise" of a decisionmaker when evaluating whether a court or arbitrator should be making the determination.[31] When considering the "comparative expertise" of courts and arbitrators, it becomes clear that a court, not an arbitrator, is better suited to address questions of waiver based on litigation-related activity.
At the time the question of litigation-related waiver arises, the trial judge has already been directly involved in the course of the legal proceedings to that point and is better positioned to determine whether such conduct amounts to a waiver under applicable law.[32] And more fundamentally, given that "the inquiry into whether a party has waived its right to arbitrate by litigating the case in court `heavily implicates "judicial procedures,"'" a "court should remain free to `control the course of proceedings before it and to correct abuses of those proceedings,' rather than being required to defer to the findings [of] an arbitrator with no previous involvement in the case."[33] Furthermore, because the question of litigation-related waiver necessarily involves matters occurring in the judicial forum, it is reasonable to believe that the contracting parties would expect a court to decide whether one party's actions before that court waived the right to arbitrate.[34]
Finally, requiring that waiver claims due to litigation-related activity be sent to the arbitrator would be exceptionally inefficient.[35] If such claims were presented to the arbitrator, and the arbitrator determined that the defendant had waived its right to arbitrate, then the cases would inevitably return to the court from which they began, without any progress' having been made toward resolution of the underlying claims. Allowing courts to decide *375 litigation-related waiver claims furthers a primary purpose of the FAA, which is to permit speedy resolution of disputes.[36]
Given the considerations of, among other things, comparative expertise and judicial economy, we hold that a waiver defense raised in the context of prior litigation-related activity is presumed to be decided by a court, rather than an arbitrator. And shifting of this issue to an arbitrator is only proper where there is "`clea[r] and unmistakable] evidence'" of such an intent in the parties' arbitration agreement.[37] The arbitration agreement at issue in this case fails to meet this standard. LaRue does not contend, nor does our review of the language in the arbitration agreement reveal, a clear and unmistakable intent to have an arbitrator decide the issue of waiver based on litigation-related conduct. Accordingly, the question whether LaRue waived its right to arbitrate due to its participation in the present litigation was properly for the district court.

LaRue Waived Its Right to Arbitrate.
Having determined that it is for a court to decide whether LaRue waived its right to arbitration based on its active participation in the present litigation, we next address whether the district court erred in finding that LaRue waived its right to arbitrate. The legal determination of waiver of arbitration is reviewed de novo, and the factual findings underlying that ruling are reviewed for clear error.[38]
There is a liberal federal policy favoring arbitration, grounded in the FAA, which provides that contract provisions directing arbitration shall be enforceable in all but limited circumstances.[39] Despite this strong federal policy favoring arbitration, the right to arbitration may be waived.[40] A party seeking arbitration may be found to have waived its right to arbitration if it "`(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'"[41] Each of these factors strongly weighs in favor of a finding that LaRue has waived its right to arbitration in this case.
LaRue does not contend, nor is there any evidence in the record to suggest, that LaRue was unaware of its right to arbitrate this dispute; indeed, LaRue now seeks to invoke that right. Nor is there any evidentiary basis explaining why LaRue failed to assert its right to arbitrate when it filed its answer in 2004 and amended answer in 2006. Accordingly, absent any evidence to the contrary, we cannot say that LaRue was unaware of its right to arbitrate. LaRue argues, however, that there is insufficient evidence in the record to indicate that it acted inconsistently with its right to arbitrate and no evidence that Good Samaritan was prejudiced.
*376 A party, however, acts inconsistently with its right to arbitrate if the party "`"[s]ubstantially invoke[s] the litigation machinery" before asserting its arbitration right' by failing to request a stay and fully adjudicating its rights."[42] A party is considered to have substantially invoked the litigation machinery when, for example, "it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner."[43] The district court, in finding that LaRue acted inconsistently with its right to arbitrate, observed that over the course of this litigation, LaRue served three sets of written discovery on Good Samaritan, exchanged pleadings, filed a counterclaim, and filed and received an unfavorable ruling on a motion for partial summary judgment.
LaRue does not deny that it engaged in the discovery process as set forth in the district court's order or that it filed and received an unfavorable judgment on its motion for partial summary judgment. LaRue contends, however, that the record on appeal does not contain any evidence relating to the parties' discovery activities or certain pretrial motions and that therefore, the evidence is insufficient to support Good Samaritan's allegation of waiver.
LaRue is partially correct that the record on appeal does not include evidence addressing the parties' discovery activities. But, contrary to LaRue's assertion, the record does show from the judge's own comments that a motion for partial summary judgment was filed by LaRue and overruled by the court. Notwithstanding the lack of evidence relating to the parties' discovery activities, there is nonetheless sufficient evidence in the record to find that LaRue acted inconsistently with its right to arbitrate.
Over 3 years passed between the time Good Samaritan filed its initial complaint and the time LaRue, at last, raised its motion to stay trial and compel arbitration. During this 3-year period, the record indicates that LaRue actively participated in the litigation. LaRue filed a counterclaim against Good Samaritan seeking to recover funds that Good Samaritan allegedly owed LaRue. Moreover, LaRue acted inconsistently with its right to arbitrate by filing a motion for partial summary judgment requiring Good Samaritan to defend its claims on the merits and requesting resolution of the matter in a judicial forum. And it was not until after the court ruled against LaRue on its motion for partial summary judgment that LaRue ultimately filed its motion to compel arbitration. This conduct by LaRue evidences a clear intent to assent to the judicial resolution of the dispute and is entirely inconsistent with its right to arbitrate.
The record also supports a finding that Good Samaritan was prejudiced by LaRue's inconsistent acts.
Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or [prejudice] can be found when a party too long postpones ... invocation of [its] contractual right to arbitration, and thereby causes [its] adversary to incur unnecessary delay or expense.[44]
Here, as already noted, LaRue did not file its motion to compel arbitration until after it had received an unfavorable ruling on its motion for partial summary judgment. *377 Moreover, LaRue's conduct had the inevitable effect of causing Good Samaritan to expend substantial time and resources in connection with this case.
And to allow LaRue to now invoke its right to arbitration after such an extensive delay would undercut the very rationale  speed and efficiency  that supports the strong presumption in favor of arbitration in the first place.[45] The evidence in this record demonstrates the prejudice necessary to support the district court's ruling that LaRue has waived its right to arbitration.
LaRue claims, however, that Good Samaritan was not prejudiced in this case because Good Samaritan allegedly did not have a right to initiate litigation in the first place. LaRue's argument is based on the language in the contract discussing the time limits for initiating an arbitration claim. This provision provides, in relevant part, that "[a]ll technical arbitrations must be filed within one (1) year of the date that the controversy arose." LaRue claims that because Good Samaritan filed its complaint more than 1 year after "the controversy arose" Good Samaritan would not be prejudiced by referring this matter to an arbitrator, because Good Samaritan failed to comply with this time limit and, therefore, did not have the right to initiate litigation in the first place.
LaRue's argument, however, assumes an incorrect premise. In order for LaRue's argument to be valid, the assumption must be made that LaRue has not waived its right to arbitration. However, as discussed above, LaRue has waived its right to arbitrate Good Samaritan's claims. Therefore, the contractual provision requiring that technical arbitrations be filed within 1 year is irrelevant to our analysis.
We conclude that LaRue has waived its right to arbitrate Good Samaritan's claim because LaRue knew of its right to arbitrate and acted inconsistently with that right and because as a result, Good Samaritan was prejudiced.

CONCLUSION
The question whether a party has waived its right to arbitrate due to litigation-related activity is an issue presumptively for a court to decide and not an arbitrator. The district court did not err in determining that LaRue waived its right to arbitrate by actively participating in the underlying proceedings before the court.
AFFIRMED.
NOTES
[1] Kelley v. Benchmark Homes, Inc., 250 Neb. 367, 550 N.W.2d 640 (1996), disapproved on other grounds, Webb v. American Employers Group, 268 Neb. 473, 684 N.W.2d 33 (2004).
[2] Reimers-Hild v. State, 274 Neb. 438, 741 N.W.2d 155 (2007).
[3] See, Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085 (8th Cir.2007); Thyssen, Inc. v. Calypso Shipping Corp., SA., 310 F.3d 102 (2d Cir.2002).
[4] 9 U.S.C. § 1 et seq. (2000).
[5] See Cornhusker Internat. Trucks v. Thomas Built Buses, 263 Neb. 10, 637 N.W.2d 876 (2002).
[6] 9 U.S.C. § 2.
[7] 9 U.S.C. § 1.
[8] Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[9] Id.
[10] Id.
[11] Id.
[12] Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).
[13] Id.
[14] Id. at 83, 123 S.Ct. 588.
[15] Id. at 83-84, 123 S.Ct. 588.
[16] Id. at 84, 123 S.Ct. 588.
[17] Id. (emphasis in original).
[18] Id.
[19] Id.
[20] Id. at 85, 123 S.Ct. 588.
[21] Id. See, e.g., Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).
[22] Howsam v. Dean Witter Reynolds, Inc., supra note 12, 537 U.S. at 85, 123 S.Ct. 588.
[23] Id.
[24] Id.
[25] Id. at 84, 123 S.Ct. 588.
[26] See, Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir.2007); Marie v. Allied Home Mortgage Corp., 402 F.3d 1 (1st Cir.2005); Parler v. KFC Corp., 529 F.Supp.2d 1009 (D.Minn.2008); Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6 (Ala.2006).
[27] Marie v. Allied Home Mortgage Corp., supra note 26, 402 F.3d at 12.
[28] Ehleiter v. Grapetree Shores, Inc., supra note 26, 482 F.3d at 217-18.
[29] See, e.g., Marie v. Allied Home Mortgage Corp., supra note 26; Ivax Corp. v. B. Braun of America, Inc., 286 F.3d 1309 (11th Cir.2002); MicroStrategy, Inc. v. Lauricia, 268 F.3d 244 (4th Cir.2001); N&D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722 (8th Cir.1976).
[30] See, Ehleiter v. Grapetree Shores, Inc., supra note 26; Marie v. Allied Home Mortgage Corp., supra note 26.
[31] Howsam v. Dean Witter Reynolds, Inc., supra note 12, 537 U.S. at 85, 123 S.Ct. 588.
[32] See Ehleiter v. Grapetree Shores, Inc., supra note 26. See, also, Marie v. Allied Home Mortgage Corp., supra note 26.
[33] Ehleiter v. Grapetree Shores, Inc., supra note 26, 482 F.3d at 218.
[34] See id.
[35] Marie v. Allied Home Mortgage Corp., supra note 26.
[36] See, e.g., Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
[37] First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
[38] See, Lewallen v. Green Tree Servicing, L.L.C., supra note 3; Thyssen, Inc. v. Calypso Shipping Corp., S.A., supra note 3.
[39] See Moses H. Cone Hospital v. Mercury Constr. Corp., supra note 21.
[40] Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156 (5th Cir. 1986).
[41] Kelly v. Golden, 352 F.3d 344, 349 (8th Cir.2003).
[42] Id.
[43] Lewallen v. Green Tree Servicing, L.L.C., supra note 3, 487 F.3d at 1090.
[44] Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991).
[45] See id.