35 So.3d 601 (2009)
BRASFIELD & GORRIE, L.L.C.
v.
SOHO PARTNERS, L.L.C.
1070296.
Supreme Court of Alabama.
August 21, 2009.
Rehearing Denied October 16, 2009.
*602 Joseph B. Mays, Jr., Marc James Ayers, and Darrell C. Tucker II of Bradley Arant Rose & White LLP, Birmingham, for appellant.
James A. Harris III and Nicole Mapp Hardee of Harris & Harris, LLP, Birmingham, for appellee.
BOLIN, Justice.
Brasfield & Gorrie, L.L.C. (hereinafter referred to as "B & G"), appeals from an order of the Jefferson Circuit Court denying its motion to compel arbitration. We reverse and remand.

I. Facts and Procedural History
In September 2004, B & G contracted with Soho Partners, L.L.C, to construct two "towers" in Homewood, Alabama, combining both retail and condominium space. The contract contained two conditions precedent to arbitration: (1) claims would be referred initially to the architect for decision and, if not resolved, (2) claims would mediated before arbitration was invoked. The pertinent parts of the contract state:
"§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES
"§ 4.4.1 Decision of Architect. Claims, including those alleging an error or omission by the Architect, ... shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due.
"....
"§ 4.5 MEDIATION
"§ 4.5.1 Any claim arising out of or related to the Contract ... shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

*603 "§ 4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings ....
"§ 4.6 ARBITRATION
"....
"§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration, which unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect."
(Emphasis added.)
A dispute arose between the parties regarding the amount owed B & G under the contract. In March 2007, B & G submitted to the American Arbitration Association ("AAA") a demand for arbitration, in which it stated that it had performed the work required under contract, that it had rendered invoices for all amounts owing under the contract, and that Soho Partners had refused to pay a specific sum due under the contract. Soho Partners moved to dismiss the arbitration proceeding and subsequently sued B & G, seeking, among other things, to enjoin the arbitration proceeding. Specifically, Soho Partners alleged that B & G had failed to satisfy conditions precedent to arbitration in accordance with the terms of the parties' contract. In May 2007, B & G filed a "Motion to Dismiss or in the Alternative to Stay Action Pending Arbitration," arguing that the issue whether conditions precedent to arbitration had been satisfied was for the arbitrator to decide. B & G attached an exhibit to its motion in which it argued that the requirement of a decision by the architect was not applicable or, if it was applicable, the condition had been satisfied by various determinations that had already been made by the architect and Soho Partners' refusal to pay based on those determinations. With respect to the mediation requirement, B & G argued that this requirement had been waived by Soho Partners' actions or had been satisfied through communications between parties' counsel and with the AAA in which B & G had made offers to mediate, which offers Soho Partners rejected.
The trial court entered an order denying B & G's motion. Specifically, the trial court concluded that B & G had failed to make a written request for mediation before initiating the arbitration proceeding:
"It is undisputed that the parties' contract requires that two conditions precedent must be satisfied before arbitration may be invoked: first, claims must be submitted to the architect, and second, a written request for mediation must be made. This court need not reach the issue of whether claims were submitted to the architect, because the record before the court is clear that [B & G] did not make any request for mediation, much less a written request for mediation prior to its initiating the arbitration proceeding. In fact, there is no evidence in the record that any written request for mediation has been made to date. Therefore, the conditions precedent to involve arbitration were not met.

*604 "....
"1. The court finds that the matter of whether [B & G] has satisfied conditions precedent to arbitration is for this court to decide.
"2. The court finds that [B & G] did not mediate its claims or request mediation in writing in accordance with the parties' contract. The [Federal Arbitration Act] has not been triggered because conditions precedent have not been satisfied...."
B & G appealed. On March 25, 2008, this Court entered an order granting B & G's motion to stay proceedings in the trial court pending the disposition of this appeal.

II. Standard of Review
At the outset we note that Soho Partners asserts that this Court lacks jurisdiction to entertain B & G's appeal. Specifically, Soho Partners argues that B & G's appeal is not from an order compelling or denying arbitration and is, therefore, not proper under Rule 4(d), Ala. R.App. P. The record reveals that after Soho Partners filed its complaint in the instant case, B & G filed a "Motion to Dismiss or in the Alternative to Stay Action Pending Arbitration." In its motion, B & G specifically stated, among other things, that a dispute had arisen between the parties over the amount due B & G under the parties' contract; that the contract stated that all disputes were to be resolved by binding arbitration; and that B & G had submitted the dispute to the AAA. It is clear from the language in B & G's motion that B & G was seeking an order compelling arbitration. Under usual circumstances, the motion is couched in two parts: "to compel arbitration" and "to stay the proceedings pending arbitration." The two parts of the motion go hand in hand. It is well settled that "[t]his Court will look at the substance of a motion rather than its title, to determine how that motion is to be considered under the Alabama Rules of Civil Procedure." Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562-63 (Ala.2005). We conclude that B & G's motion was filed pursuant to Rule 4(d), Ala. R.App. P. "Review of a trial court's denial of a motion to compel arbitration is properly sought through a direct appeal. Rule 4(d), Ala. R.App. P.; A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990)." Edward D. Jones & Co. v. Wehby, 882 So.2d 832, 835 (Ala. 2003). "This Court reviews de novo a trial court's denial of a motion to compel arbitration." Dean Witter Reynolds v. McDonald, 758 So.2d 539, 541 (Ala. 1999).

III. Substantive and Procedural Arbitrability
In ruling on a motion to stay judicial proceedings following a request for arbitration, the court is required to decide matters of "substantive arbitrability," that is, (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the specific dispute falls within the scope of that agreement. Dean Witter, 758 So.2d at 542. "Procedural arbitrability," on the other hand, involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("`"procedural" questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide'"); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that an arbitrator should decide whether the steps of a grievance procedure *605 were completed, where those steps were prerequisites to arbitration).
On appeal, B & G argues that it is for the arbitrator, and not the court, to decide whether conditions precedent to arbitration in a contract have been met. Soho Partners argues that the language quoted above from Howsam, supra, was merely dicta because that case did not involve conditions precedent to arbitration; instead, it involved whether an arbitrator should apply the limitations period set out in the arbitration rules to the controversy. Soho Partners also argues that this case falls under an exception to the general rule that procedural arbitrability is determined by the arbitrator.
In Howsam, the United States Supreme Court determined that the issue whether an arbitration claim was barred by a six-year limitations period in the arbitration rules of the National Association of Securities Dealers ("NASD"), under which the parties had agreed to operate, was an issue to be determined by an arbitrator and not by the court. The Supreme Court noted that the court should decide issues "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applied to a particular type of controversy." 537 U.S. at 84, 123 S.Ct. 588. Other "gateway" issues, however, are left to the arbitrator. The Supreme Court noted:
"This Court has determined that `arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960); see also First Options [of Chicago, Inc. v. Kaplan, 514 U.S. 938] at 942-943 [(1995)]. Although the Court has also long recognized and enforced a `liberal federal policy favoring arbitration agreements,' Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983), it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the `question of arbitrability,' is `an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986) (emphasis added); First Options, supra, at 944. We must decide here whether application of the NASD time limit provision falls into the scope of this last-mentioned interpretive rule.
"Linguistically speaking, one might call any potentially dispositive gateway question a `question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase `question of arbitrability' has a far more limited scope. See 514 U.S., at 942. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.
"Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a `question of arbitrability' for a court to decide. See id., at 943-946 (holding that a court should decide whether the arbitration *606 contract bound parties who did not sign the agreement); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, e.g., AT & T Technologies, supra, at 651-652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241-243 (1962) (holding that a court should decide whether a clause providing for arbitration of various `grievances' covers claims for damages for breach of a no-strike agreement).
"At the same time the Court has found the phrase `question of arbitrability' not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus `"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide. John Wiley, supra, at 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration). So, too, the presumption is that the arbitrator should decide `allegation[s] of waiver, delay, or a like defense to arbitrability.' Moses H. Cone Memorial Hospital, supra, at 24-25. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to `incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act],' states that an `arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp.2002). And the comments add that `in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' Id., § 6, comment 2, 7 U.L.A., at 13 (emphasis added).
"Following this precedent, we find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be `questions of arbitrability.' E.g., Moses H. Cone Memorial Hospital, supra, at 24-25 (referring to `waiver, delay, or a like defense'). Such a dispute seems an `aspec[t] of the [controversy] which called the grievance procedures into play.' John Wiley, supra, at 559."
Howsam, 537 U.S. at 83-85, 123 S.Ct. 588.
Although we recognize that Howsam involved the application of a rule involving a limitations period, our review of Howsam convinces us that Soho Partners' and B & G's contractual obligation to submit claims first to the architect for decision and then to mediate before invoking arbitration is the same kind of "condition precedent to an obligation to arbitrate" that Howsam presumed would be decided by the arbitrator.[1] It is clear from Howsam *607 that the Supreme Court was referring to "waiver, delay, or a like defense" that arose out of contractual obligations required before arbitration could be invoked, such as the limitations period involved in Howsam.
We also disagree with Soho Partners' contention that this case would fall under an exception to the general rule that procedural arbitrability is to be resolved by the arbitrator. In John Wiley, supra, the Supreme Court stated that the general rule that procedural arbitrability is for the arbitrator to decide would not apply if a court could confidently say that a claim was strictly procedural and it should operate as a complete bar to arbitration. The United States Court of Appeals for the Fifth Circuit has interpreted this exception as saying "`a court will not order arbitration if "no rational mind" could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear.'" General Warehousemen & Helpers Local Union 767 v. Albertson's Distribution, Inc., 331 F.3d 485, 488 (5th Cir.2003) (quoting Oil, Chem. & Atomic Workers' Int'l Union Local 4-447 v. Chevron Chem. Co., 815 F.2d 338, 342 (5th Cir.1987)). The Fifth Circuit Court of Appeals in Albertson's declined to apply this "rare exception" because there were in that case factual disputes as to whether the union had failed to comply with the procedural requirements for arbitration and whether the failure to comply was excused by the parties' own conduct. Similarly, in the present case, there is a question of whether B & G has sufficiently satisfied the conditions precedent or whether those conditions precedent were waived by Soho Partners' conduct with respect to the mediation requirement, which B & G argued was waived by Soho Partners' actions in refusing offers to mediate or was satisfied through communications between parties' counsel.
We recognize that in Ex parte Williams, 591 So.2d 71 (Ala.1991), this Court addressed the effect of a failure to satisfy a condition precedent to arbitration. Specifically, this Court issued a writ of mandamus requiring the trial court to vacate an order compelling arbitration where it was undisputed that the contractor failed to submit known claims to the architect before requesting arbitration. This Court concluded that "failure to submit the dispute to the architect constituted a failure to meet the contractual condition precedent to arbitration." 591 So.2d at 73. Williams is distinguishable from the present case. First, the evidence of failure to comply with a condition precedent to arbitration was undisputed in Williams, whereas such evidence is disputed in the present case. Second, Williams was issued before the United States Supreme Court's ruling in Howsam, and it does not appear that either party in Williams argued that an arbitrator, rather than the trial court, should decide whether a condition precedent has been met.

*608 IV. Conclusion

Based on the foregoing reasons, we conclude that this case presents a question of procedural arbitrability that should be decided by the arbitrator. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.
NOTES
[1] Some courts have held that the statement in Howsamthat generally questions of waiver are presumed to be issues for the arbitrator rather than a courtis merely dicta or that Howsam is distinguishable with regard to waiver. See, e.g., American Gen. Home Equity, Inc. v. Kestel, 253 S.W.3d 543 (Ky.2008); Good Samaritan Coffee Co. v. LaRue Distrib., Inc., 275 Neb. 674, 748 N.W.2d 367 (2008). Those cases concern whether rights under an otherwise binding arbitration agreement have been waived through a party's conduct in litigating. In Alabama, the issue whether a party has substantially invoked the litigation process is a matter for the trial court to decide. This is so because invoking the litigation process involves matters that occurred before the court or under its watch. In the present case, the issue of "waiver" involves conditions precedent to arbitration and not litigation conduct.