# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PURVI GANDHI-KAPOOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | C.A. No. 2022-0881-JTL |
| ) | |
| HONE CAPITAL LLC AND CSC ) | |
| UPSHOT VENTURES I, L.P., ) | |
| ) | |
| Respondents. ) | |

## OPINION DENYING RULE 12(B)(1) MOTION TO DISMISS IN FAVOR OF ARBITRATION AND RULE 60 MOTION TO VACATE ORDERS

Date Submitted: September 26, 2023
Date Decided: November 22, 2023
Date Corrected: December 4, 2023

Evan O. Williford, THE WILLIFORD FIRM LLC, Wilmington, Delaware; Ellen A. Cirangle, LUBIN OLSON & NIEWIADOMSKI LLP, San Francisco, California; *Attorneys for Petitioner Purvi Gandhi-Kapoor.*

Blake K. Rohrbacher, RICHARDS, LAYTON & FINGER LLP, Wilmington, Delaware; *Attorneys for Respondent CSC Upshot Ventures I, L.P.*

Hone Capital LLC, *Unrepresented.*

**LASTER, V.C.**

Petitioner Purvi Gandhi-Kapoor filed this summary advancement proceeding in September 2022. Eight months later, in April 2023, the court granted summary judgment establishing her right to receive advancements from CSC Upshot Ventures I, L.P. ("Upshot"). The summary judgment order also determined that Upshot owed Gandhi specific amounts. When Upshot failed to pay, Gandhi moved for sanctions. In July 2023, the court granted that motion, held Upshot in contempt, and imposed coercive sanctions designed to compel Upshot to comply. When Upshot still failed to pay, the court issued an order requiring Upshot to show cause why further sanctions should not be imposed.

At that point, Upshot invoked an arbitration provision in its limited partnership agreement (the "Arbitration Provision") and moved to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction. Upshot also moved under Rule 60 to vacate the court's prior orders, arguing that because the Arbitration Provision deprived the court of subject matter jurisdiction, those rulings were void.

This opinion denies the motion to dismiss for lack of subject matter jurisdiction. That concept refers to a court's power to hear particular claims. By statute, the court has subject matter jurisdiction over an action to enforce an advancement provision in a limited partnership agreement. Properly understood, an arbitration provision does not deprive a court of subject matter jurisdiction. An arbitration provision is a special type of forum selection clause. By agreeing to arbitrate, the parties commit contractually to litigate their dispute in a private forum. A court can—and generally will—enforce the arbitration agreement, but that

outcome flows from principles of contract law, not the absence of subject matter jurisdiction.

The fact that Delaware decisions have considered motions to dismiss in favor of arbitration under Rule 12(b)(1), which the rule describes as a defense of lack of subject matter jurisdiction, does not mean that an arbitration provision deprives a court of subject matter jurisdiction. Despite its description, Rule 12(b)(1) is not used exclusively where subject matter jurisdiction is lacking. Parties also use the rule to advance arguments about why courts should not exercise jurisdiction they have. Examples include the failure to exhaust remedies, abstention doctrines, and standing doctrines.

Because an arbitration provision does not deprive a court of subject matter jurisdiction, case law holds universally that a party can waive a right to arbitrate by participating sufficiently in a court proceeding. If an arbitration provision truly deprived a court of subject matter jurisdiction, it would not be waivable.

Upshot next argues that even if the Arbitration Provision could be waived, the arbitrator—and not the court—must determine whether waiver occurred. Case law distinguishes between procedural waivers and judicial conduct waivers. Arbitrators address procedural waivers. Courts rule on judicial conduct waivers.

The exception is *Meyers v. Quiz-Dia LLC*,[1] a decision I authored. The parties in *Meyers* did not brief the concept of a judicial conduct waiver. Presented only with

---

[1] 2016 WL 7048783 (Del. Ch. Dec. 2, 2016).

2

authorities that addressed procedural waivers, I applied those rules and deferred to the arbitrator. The outcome in *Meyers* resulted from the case-specific arguments that the parties made.

Upshot further argues that even if a court generally decides whether a judicial conduct waiver has occurred, parties can delegate that issue to the arbitrator by agreeing to arbitrate all disputes under a set of arbitral rules that authorize the arbitrator to decide questions involving its own jurisdiction. A majority of courts reject that position. Regardless, the Federal Arbitration Act (the "FAA")[2] requires that a court determine whether a judicial conduct waiver has occurred. Under the FAA, a court—not an arbitrator—must determine whether an agreement to arbitrate exists. An arbitrator cannot make that determination, because without an agreement to arbitrate, the arbitrator has no power.

When a plaintiff files an arbitrable claim in court, the plaintiff implicitly offers to litigate the claim. A defendant can accept that offer by engaging sufficiently in litigation to warrant a judicial conduct waiver. When viewed from this perspective, determining whether a judicial conduct waiver has occurred is a means of asking whether the parties have reached a new agreement to litigate—rather than arbitrate—the claim that the plaintiff filed. Under the FAA, a court must decide that issue.

---

[2] *See* 9 U.S.C. §§ 1–402.

3

On the merits of the waiver question, Upshot argues that it did not waive its right to arbitrate by failing to invoke the provision at the outset of a summary advancement proceeding, failing to mention it in its answer, failing to mention it in its response to the summary judgment motion, and failing to mention it in the response to the motion for contempt. Upshot has not pointed to any case in which a court permitted a party to invoke an arbitration provision after losing on the merits and being held in contempt. That would be the ultimate do-over.

Upshot's Rule 12(b)(1) motion is therefore denied. Upshot's Rule 60 motion is also denied. That motion depends on the case being subject to arbitration, but because Upshot waived its right to arbitrate, there is no longer any basis for relief. The court therefore need not consider whether grounds would exist to vacate its orders if the dispute was arbitrable.

## I. FACTUAL BACKGROUND

Some of the facts pertinent to the motions were established when the court ruled on Gandhi's motion for summary judgment. Other facts are drawn from the parties' submissions in connection with Upshot's motions.

### A. The California Action

Upshot is an indirect subsidiary of China Science & Merchants Investment Management Group Co., Ltd. ("CSC Group"), a private equity fund. Upshot invests in technology companies.

Hone Capital LLC ("Hone") is another entity controlled by the CSC Group. Hone managed Upshot's business.[3] Gandhi served as CFO of Hone and had the title of Partner. She reported to Bixuan Wu.

Gandhi and Wu's compensation included a profit interest based on Upshot's performance. For disputed reasons, the CSC Group terminated Gandhi and Wu.

In 2020, Hone sued Gandhi in California Superior Court. Hone's complaint asserted that Gandhi breached her fiduciary duties and engaged in fraud when managing Upshot.

Gandhi and Wu responded by filing suit to enforce their right to a profit interest. Hone moved to consolidate the lawsuits. The California Superior Court granted the motion, resulting in what this decision calls the "California Action."

## B.    This Proceeding

Gandhi incurred significant expenses defending against Hone's claims and pursuing her own counterclaims in the California Action. On September 29, 2022, Gandhi sent a written demand to Hone and Upshot asking them to advance her expenses. The next day, Gandhi filed this action to enforce her right to advancement.

---

[3] Upshot now argues that Hone never managed its business, citing a provision in its limited partnership agreement which identifies a different entity as its general partner. Whether Hone formally acted as Upshot's general partner is a different question than whether Hone was a *de facto* manager of Upshot's business. *Cf. In re P3 Health Gp. Hldgs., LLC*, 285 A.3d 143, 153–54 (Del. Ch. 2022). When Gandhi moved for summary judgment, she argued that Hone managed Upshot's business. Hone and Upshot did not dispute that point.

The parties initially stipulated that Gandhi was entitled to advancement from Hone. Upshot answered Gandhi's complaint but did not refer to arbitration.

## C. The Motion for Summary Judgment

In November 2022, Hone moved to vacate the stipulations regarding Gandhi's advancement rights. Hone contended that its Delaware counsel lacked authority to agree to those stipulations. Delaware counsel withdrew and new Delaware counsel appeared for Hone and Upshot.

Gandhi opposed the motion to vacate. Gandhi also filed a cross motion for summary judgment to establish her advancement rights.

Gandhi briefed the summary judgment motion in a meaningful way. In support of her motion, Gandhi submitted an affidavit with three exhibits. She also relied on an affidavit from her forwarding counsel with nine exhibits. Her opening brief was thirty-three pages long.

Upshot and Hone filed a bare-bones response that was just fourteen pages long. Upshot and Hone did not provide any supporting affidavits or exhibits. Most significantly, they did not take issue with any of Gandhi's factual assertions.

Gandhi filed a detailed reply. At sixteen pages, it was longer than the response that Upshot and Hone had filed.

During briefing, Upshot did not rely on the Arbitration Provision. No one mentioned the possibility of arbitration.

By order dated April 5, 2023, the court granted Gandhi's motion for summary judgment (the "Advancement Order"). The court held that Gandhi was entitled to advancement for the California Action from both Upshot and Hone. That ruling

6

rendered it unnecessary to address the motion to vacate, because even if the court granted the motion and vacated the earlier stipulations, Gandhi would be entitled to advancement under the Advancement Order.

## D. The Sanctions Ruling

After the court entered the Advancement Order, Gandhi sent a written demand for advancements to Upshot on April 16, 2023. Upshot was obligated to pay any amounts to which it did not object by May 11. Upshot did not object to any amounts and did not make any payments.

On May 15, 2023, Gandhi moved for sanctions to enforce the Advancement Order. The parties briefed the motion. No one mentioned the possibility of arbitration. The court issued an opinion that granted the sanctions motion in part.[4]

Despite the imposition of sanctions, neither Upshot nor Hone paid any of the advancements that were due. Gandhi served discovery to determine why Upshot and Hone were not paying. Upshot and Hone resisted those efforts.

On May 2, June 20, and July 20, 2023, Gandhi sent additional demands for advancements to Upshot and Hone. Upshot and Hone did not object to any items. They also did not pay any amounts.

## E. Upshot Invokes The Arbitration Provision.

On August 10, 2023, Gandhi filed a renewed motion for sanctions. That same day, new counsel appeared for Upshot.

---

[4] *Gandhi-Kapoor v. Hone Cap. LLC*, 2023 WL 4628782 (Del. Ch. July 19, 2023).

On August 18, 2023, Upshot invoked the Arbitration Provision in multiple filings. Upshot moved for dismissal under Rule 12(b)(1) because the court lacked subject matter jurisdiction in light of the Arbitration Provision. Upshot also asserted that because the court lacked subject matter jurisdiction, all of the orders that the court had issued regarding Upshot were void. And Upshot opposed the second motion for sanctions because the court's orders were void.

Upshot blamed the court for not identifying and addressing the Arbitration Provision. Its opposition to the renewed sanctions motion stated: "Both the SJ Order and the Contempt Opinion overlooked key language in the Fund's Second Amended and Restated Limited Partnership Agreement . . . . In particular, they did not address the Agreement's arbitration clause."[5] In its motion to dismiss, Upshot objected that the Arbitration Provision "was neither referenced nor analyzed in the SJ Order."[6] Later, Upshot complained that that "the SJ Order did not explain how this Court could exercise subject-matter jurisdiction in the face of the Agreement's exclusive arbitration clause."[7] The answer to those criticisms is simple: Upshot had never mentioned the Arbitration Provision.

---

[5] Dkt. 70 ¶ 9.

[6] Dkt. 73 ¶ 2.

[7] Dkt. 73 ¶ 11.

On September 26, 2023, the court heard oral argument on Gandhi's renewed sanctions motion and Upshot's motions. Hone did not appear. The court ruled orally on the sanctions motion against Hone. Upshot took action after the hearing to render the sanctions motion moot. This decision therefore only addresses Upshot's motions under Rule 12(b)(1) and Rule 60.

## II.    LEGAL ANALYSIS

Upshot has moved to dismiss this case in favor of arbitration. Upshot has also moved to vacate this court's rulings on the theory that the Arbitration Provision deprives the court of subject matter jurisdiction.

### A.    The Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Upshot's motion to dismiss relies on Rule 12(b)(1). That rule states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of subject matter jurisdiction.[8]

Upshot observes that Delaware courts generally entertain motions to dismiss in favor of arbitration under Rule 12(b)(1). Upshot infers that an arbitration provision therefore must deprive the court of subject matter jurisdiction.

For Upshot, framing its motion as a challenge to the court's subject matter jurisdiction carries another advantage. Rule 12(h)(3) makes clear that a defense of

---

[8] Ct. Ch. R. 12(b)(1).

lack of subject matter jurisdiction cannot be waived.[9] For a party that first invoked the Arbitration Provision eleven months into a summary proceeding, after losing on the merits, after being held in contempt, and after hiring its third set of lawyers, a nonwaivable defense is its only refuge.

Unfortunately for Upshot, the Arbitration Provision does not deprive this court of subject matter jurisdiction. True, Delaware courts have entertained motions to dismiss in favor of arbitration under Rule 12(b)(1), but that approach reflects a widespread practice in which the rule is used not only for arguments about a court's lack of subject matter jurisdiction, but also for arguments that the court should decline to exercise its jurisdiction. And contrary to situations where a court truly lacks subject matter jurisdiction, a party can waive its right to arbitrate. Here, Upshot waived its ability to rely on the Arbitration Provision.

1. **Whether The Court Has Subject Matter Jurisdiction Over Gandhi's Claims.**

Subject matter jurisdiction refers to a court's "authority to adjudicate the type of controversy involved in the action."[10] A court derives its subject matter jurisdiction from the constitutional or statutory provisions that create or empower the court.[11] A

---

[9] Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action.").

[10] Restatement (Second) of Judgments § 11 (Am. L. Inst. 1982).

[11] *Id.* § 11, cmt. a.

10

court's subject matter jurisdiction thus refers to the types of cases that the sovereign creating the court has authorized the court to hear.[12]

Because a court's subject matter jurisdiction derives from a grant of sovereign authority, parties cannot alter it by private ordering. "[S]ubject matter jurisdiction may not be created by waiver or by agreement of the parties. Similarly, such an agreement also may not restrict or eliminate subject matter jurisdiction that is otherwise present."[13]

By agreeing to litigate a dispute in a particular forum, parties can commit among themselves not to ask a court to exercise the subject matter jurisdiction it possesses. Such an agreement does not deprive a court of its authority to hear a particular type of case. The clause does not "oust" a court of its subject matter jurisdiction over an action; instead, "it raises the question of whether a 'court should . . . exercise[ ] its jurisdiction to . . . give effect to the legitimate expectations

---

[12] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (explaining that subject matter jurisdiction refers to a court's "power to hear a case"); *accord Union Pac. R.R. v. Bhd. of Locomotiv Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81 (2009).

[13] 2 *Moore's Federal Practice* § 12.30[1], Lexis+ (3d. ed. coverage through Nov. 2023); *see Kroll v. City of Wilmington*, 2023 WL 6012795, at *14 (Del. Ch. Sep. 15, 2023) ("Subject matter jurisdiction concerns this court's powers, not the parties' rights. Therefore, parties may not waive the existence or non-existence of subject matter jurisdiction."); *de Adler v. Upper N.Y. Inv. Co. LLC*, 2013 WL 5874645, at *8 (Del. Ch. Oct. 31, 2013) ("The Court's subject matter jurisdiction cannot be determined by contract, by consent in the pleadings, or even by procedural waiver." (footnotes omitted)).

of the parties.'"[14] The court does not dismiss the case because it lacks the power to hear it, but because "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause."[15] Principles of contract law, not a lack of subject matter jurisdiction, generate that outcome.

An arbitration provision "is, in effect, a specialized kind of forum selection clause," so the same principles apply.[16] Following this reasoning, the United States Courts of Appeals for the Third, Fifth, Seventh, and Eight Circuits have held that an arbitration agreement does not alter a court's subject matter jurisdiction.[17] A

---

[14] *Schwartz v. Cognizant Tech. Sols. Corp.*, 2022 WL 880249, at \*5 (Del. Ch. Mar. 25, 2022) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).

[15] *Ingres Corp. v. C.A., Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

[16] *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974), *quoted in Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013); *accord Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 753–54 (Del. Ch. 2023).

[17] *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 272 (3d Cir. 2004) (overruling precedent and holding that arbitration is not a jurisdictional issue); *Ruiz v. Donahoe*, 784 F.3d 247, 250 (5th Cir. 2015) ("[A]greements to arbitrate implicate forum selection and claims-processing rules not subject matter jurisdiction."); *Grasty v. Colo. Tech. Univ.*, 599 Fed. Appx. 596, 597 (7th Cir. 2015) ("[A]n agreement to arbitrate does not affect a district court's subject-matter jurisdiction. An arbitration clause is a type of forum-selection clause."); *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) ("[T]he existence of that [arbitration] agreement alone does not deprive the federal courts of jurisdiction.").

majority of the federal district courts to consider the issue have reached the same conclusion.[18]

This court has subject matter jurisdiction over Gandhi's claims. The Delaware Revised Uniform Limited Partnership Act ("DRULPA") empowers limited partnerships to grant advancement and indemnification rights in their partnership agreements.[19] Section 17-111 of DRULPA provides that "[a]ny action to interpret, apply or enforce the provisions of a partnership agreement, or the duties, obligations

---

[18] *See, e.g.*, *Brown v. Five Star Quality Care, Inc.*, 2016 WL 8710474, at *5 (D.S.C. 2016) ("Arbitration clauses are forum-selection clauses. . . . This Court's subject-matter jurisdiction is not subject to diminution by private agreement." (citation omitted)); *Hess v. Positive Energy Fleet, LLC*, 571 F. Supp. 3d 844, 848 (E.D. Mich. 2021) ("[A]n arbitration clause is more like a claim-processing rule than a restriction on the Court's adjudicatory authority."); *FCCI Ins. Co. v. Nicholas Cty. Library*, 2019 WL 1234319, at *4 (E.D. Ky. Mar. 15, 2019) ("[T]he defect created by the binding arbitration clause, assuming it applies to these claims, does not appear to be a lack of subject matter jurisdiction where the Court in fact has and may retain subject matter jurisdiction pending arbitration."); *Am. E Gp. LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 399–400 (S.D.N.Y 2020) ("Because enforcement of a forum selection clause is not jurisdictional, enforcement of a provision compelling arbitration does not implicate the Court's subject matter jurisdiction."). But this view is not unanimous, and some district courts continue to maintain that an arbitration provision deprives a court of subject matter jurisdiction, or at least should be viewed through that lens. *See, e.g.*, *LeCann v. Aliera Cos., Inc.*, 2021 WL 2554942, at *53 (N.D. Ga. June 22, 2021) (maintaining that "motions [to compel arbitration] are factual attacks on the existence of subject matter jurisdiction . . . ."); *United States v. Int'l Fid. Ins. Co.*, 232 F. Supp. 3d 1193, 1200 (S.D. Ala. 2017) (finding no reason to reject the Rule 12(b)(1) framing); *see also Powers Distrib. Co. v. Grenzebach Corp.*, 2016 WL 6611032, at *2–3 (E.D. Mich. Nov. 9, 2016) (analyzing the different treatment of arbitration provisions under Rules 12(b)(1) and 12(b)(6), finding that the choice would not change the outcome, and using the more traditional route of Rule 12(b)(1)).

[19] *E.g., Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.*, 1999 WL 743479, at *17 (Del. Ch. Sep. 10, 1999) (interpreting 6 *Del. C.* § 17-108 to authorize advancements as well as indemnification).

13

or liabilities of a limited partnership to the partners of the limited partnership, . . . may be brought in the Court of Chancery."[20] An action to enforce the advancement and indemnification provisions in Upshot's limited partnership agreement is an action "to interpret, apply or enforce the provisions of a partnership agreement," as well as an action "to interpret, apply or enforce . . . the duties, obligations or liabilities of a limited partnership to the partners of the limited partnership."[21]

Gandhi has asserted claims for advancement and indemnification under the provisions in Upshot's limited partnership agreement. The General Assembly has given the Court of Chancery subject matter jurisdiction over those claims. Private parties cannot eliminate that jurisdiction by contract. Accordingly, to the extent Upshot argues that this court lacks subject matter jurisdiction in the sense of the power to hear Gandhi's claims, the motion is denied.

### 2. The Role Of The Rule 12(b)(1) Motion

Upshot's strongest argument in favor of the Arbitration Provision depriving this court of subject matter jurisdiction relies on the fact that courts entertain motions to dismiss in favor of arbitration under Rule 12(b)(1) and have used the language of subject matter jurisdiction when analyzing the issue. Despite its framing as a motion to dismiss for *lack* of subject matter jurisdiction, Rule 12(b)(1) is also used to argue about whether a court should exercise the subject matter jurisdiction that it

---

[20] 6 *Del. C.* § 17-111.

[21] *Id.*

possesses. Admittedly, courts do not always conduct their analyses with that degree of precision, and the Supreme Court of the United States has lamented "drive-by jurisdictional rulings" in which a federal court dismisses a case for lack of subject matter jurisdiction "without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction."[22] The Court affords them "no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit."[23] It thus does not follow that any argument advanced under Rule 12(b)(1) necessarily challenges a court's subject matter jurisdiction, nor that any decision that rules on a Rule 12(b)(1) motion and uses the language of subject matter jurisdiction necessarily establishes that a court lacks the power to hear that type of case. Close attention is required.

As a leading treatise explains, parties and courts do not use Rule 12(b)(1) exclusively to raise a *lack* of subject matter jurisdiction; they also use the motion to address "a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions."[24] Those defenses generally involve whether a court should decline to exercise subject matter jurisdiction that the court otherwise

---

[22] *Arbaugh*, 546 U.S. at 510 (cleaned up).

[23] *Id.* at 511 (cleaned up).

[24] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2023).

would have, such as abstention doctrines and justiciability issues.[25] "Thus, the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses" that "share the common theme of challenging the court's ability to proceed with the action."[26]

For example, a defense that a party has failed to exhaust administrative remedies "is not a jurisdictional or an absolute requirement; it is a judicially created doctrine, which courts exercise discretionally."[27] Rule 12(b)(1) is the vehicle that parties often use to raise this issue.[28]

Other examples include the justiciability doctrines of standing, ripeness, and mootness. Federal courts often frame those issues as involving subject matter jurisdiction, because the Case or Controversy Clause of the United States Constitution limits the judicial power of the federal courts to "cases" and "controversies."[29] The Supreme Court of the United States has held that a federal court only has subject matter jurisdiction when (i) the plaintiff has suffered an injury

---

[25] *Id.* The authors note that the motion is sometimes used to argue that a claim is barred by the statute of limitations. That defense does not challenge a court's ability to hear the type of case that the plaintiff has filed, but rather argues that the plaintiff cannot state a viable claim because the case was brought too late. The defense is therefore properly asserted under Rule 12(b)(6).

[26] *Id.*

[27] *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 2873745, at *4 (Del. Ch. Oct. 6, 2006).

[28] *E.g., id.* at *4.

[29] U.S. Const. art. III, § 2, cl. 1.

in fact, (ii) the injury is fairly traceable to the defendant's actions, and (iii) the injury is capable of redress by the court.[30] The Case or Controversy Clause deprives federal courts of jurisdiction where no case or controversy exists.[31]

State courts apply similar doctrines, but prudentially and "as a matter of self-restraint."[32] Justiciability doctrines technically do not limit state courts, because state courts draw their jurisdiction from the original sovereignty of the several states as governments with plenary and unenumerated powers.[33] State courts "are not bound by the federal Constitution's 'case or controversy' requirement."[34]

---

[30] *Allen v. Wright*, 468 U.S. 737, 751 (1984).

[31] *Flast v. Cohen*, 392 U.S. 83, 96 (1968); *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

[32] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1111 (Del. 2003); *accord Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991).

[33] *See generally* John Dimanno, *Beyond Taxpayers' Suits: Public Interest Standing in the States*, 41 Conn. L. Rev. 639, 658–63 (2008) (collecting authorities); Randy J. Holland, *State Constitutions: Purpose and Function, in The Delaware Constitution of 1897: The First One Hundred Years* 3, 13–14, 16 (Randy J. Holland & Harvey Bernard Rubenstein eds. 1997).

[34] Eli Savit, *States Empowering Plaintiff Cities*, 52 U. Mich. J.L. Reform 581, 605 (2019); *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability . . . ."); Helen Hershkoff, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L. Rev. 1833, 1857 (2001) ("'State courts need not become enmeshed in the federal complexities and technicalities involving standing and are free to reject procedural frustrations in favor of just and expeditious determination on the ultimate merits.'" (quoting *State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1081–82 (Ohio 1999) (quoting 59 Am. Jur. 2d *Parties* § 30 (1987)))).

Take standing. That concept "refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[35] A dispute over standing is concerned "only with the question of *who* is entitled to mount a legal challenge and not with the merits or the subject matter of the controversy."[36] In state court, therefore, standing does not implicate the court's power to hear a particular claim. It asks whether a particular party can assert it. Rule 12(b)(1) is often used to challenge standing.[37]

Or take ripeness. Strictly speaking, a ripeness determination does not involve a court determining whether a particular claim falls within its jurisdictional authority. The ripeness inquiry requires "a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in postponing review until the question arises in some more concrete and final form."[38] The court thus makes a discretionary determination about whether to "decline to

---

[35] *Stuart Kingston*, 596 A.2d at 1382.

[36] *Id.*

[37] *E.g., Cont'l Auto. Sys., Inc. v. Nokia Corp.,* 2023 WL 1370523, at \*6 (Del. Ch. Jan. 31, 2023).

[38] *XL Specialty Ins. Co. v. WMI Liquid. Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (cleaned up).

exercise jurisdiction" that it otherwise possesses. [39] Ripeness is therefore an abstention doctrine. Rule 12(b)(1) is often used to challenge claims as unripe.[40]

Last, take mootness. As a general rule, a mooted case becomes nonjusticiable.[41] Yet there are exceptions, and a court will rule on mooted issues that involve "matters of public importance" and "situations that are capable of repetition but evade review."[42] In state court, mootness is an abstention doctrine. Rule 12(b)(1) is often used to challenge claims as moot.[43]

These defenses are subject-matter-jurisdiction adjacent in that they ask a court to decline to exercise the subject matter jurisdiction it otherwise has. The court technically may not lack subject matter jurisdiction, but as a matter of established doctrine, the court should abstain from exercising subject matter jurisdiction. Rule 12(b)(1) is a suitable vehicle for raising these arguments.

Using Rule 12(b)(1) also has a practical benefit, because a litigant can bring a Rule 12(b)(1) motion at any point in a case. That is important, because while

---

[39] *Id.*; *accord Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) ("Courts in this country generally, and in Delaware in particular, decline to exercise jurisdiction over cases in which a controversy has not yet matured to a point where judicial action is appropriate.").

[40] *E.g., B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC*, 2020 WL 4195762, at *1 (Del. Super. July 21, 2020).

[41] *Gen. Motors Corp. v. New Castle Cty.*, 701 A.2d 819, 823–24 (Del. 1997).

[42] *Id.* at 823 n.5.

[43] *E.g., PPL Corp. v. Riverstone Hldgs. LLC*, 2020 WL 3422397, at *3 (Del. Ch. June 22, 2020).

19

questions of ripeness typically present themselves at the start of a case, questions of mootness or loss of standing can arise at any point.

Both the abstention concept and the timing advantage explain the courts' traditional use of Rule 12(b)(1) to entertain motions to dismiss in favor of arbitration.[44] As discussed previously, a motion to dismiss in favor of arbitration does not deprive a court of subject matter jurisdiction; it asks the court to enforce the parties' agreement to arbitrate and abstain from exercising jurisdiction that the court otherwise would have. A motion to dismiss in favor of arbitration challenges the forum in which suit was filed, and the proper motion for disputing forum invokes Rule 12(b)(3) and presents a defense of improper venue.[45] But strictly using Rule 12(b)(3) requires that a party raise the forum issue at the outset of the case,[46] which means that if a party fails to invoke a forum selection clause promptly, a busy court could

---

[44] Another link between arbitration provisions and Rule 12(b)(1) is historical. Courts originally declined to enforce arbitration provisions as contrary to public policy because "their effect was to 'oust the jurisdiction' of the court." *M/S Bremen*, 407 U.S. at 9; *see Pettinaro Constr. Co. v. Harry C. Partridge, Jr. & Sons, Inc.*, 408 A.2d 957, 961 (Del. Ch. 1979) (collecting authorities). In 1925, Congress enacted the FAA, which overruled the ouster doctrine for arbitration clauses. United States Arbitration Act, Act of Feb. 12, 1925, ch. 213, § 1, 43 Stat. 883. In 1972, the *M/S Bremen* case did the same for forum selection clauses. 407 U.S. at 12. After these developments, the ouster doctrine no longer played any role, but the historical connection between those provisions and the concept of subject matter jurisdiction may have contributed to the continuing use of Rule 12(b)(1).

[45] *E.g.*, *In re Bay Hills Emerging P'rs I L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018) ("The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue."); *Bonanno v. VTB Hldgs., Inc.*, 2016 WL 614412, at *5 (Del. Ch. Feb. 8, 2016) (same).

[46] *See* Ct. Ch. R. 12(h).

end up presiding over a case that the parties had agreed to litigate somewhere else. Enforcing the parties bargain becomes attractive both from the standpoint of upholding contractual expectations and for purposes of docket management, at least so long as the case has not progressed to a meaningful degree.[47] It thus becomes understandable why judges would be receptive to a procedural vehicle that enables a party to raise an arbitration provision or a forum selection clause later in the case.

Rule 12(b)(1) fits the bill. Using Rule 12(b)(1) does not mean that the parties' agreement deprives the court of subject matter jurisdiction. As with other abstention doctrines, the agreement provides strong grounds for the court to decline to exercise the jurisdiction that it possesses. Rule 12(b)(1) is a suitable vehicle for raising challenges to a court's subject matter jurisdiction in its strict sense, as well as for raising arguments about why a court should not exercise its jurisdiction.

Understanding the use of Rule 12(b)(1) also helps harmonize cases that have used the language of subject matter jurisdiction when addressing arbitration provisions with cases explaining the nature of subject matter jurisdiction. In Delaware, one of the leading decisions on arbitration provision is *Elf Atochem*, where the Delaware Supreme Court enforced an arbitration provision in an LLC agreement which directed that "all disputes be resolved exclusively by arbitration or court proceedings in California."[48] When a member of the LLC sued in the Court of

---

[47] *Cf.* Richard A. Posner, *What Do Judges and Justices Maximize? (The Same Thing Everybody Else Does)*, 3 Supr. C. Econ. Rev. 1 (1993).

[48] *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999).

Chancery, the defendant moved to dismiss under Rule 12(b)(1), and the trial court granted the motion. On appeal, the parties framed their dispute in terms of subject matter jurisdiction, and the Delaware Supreme Court spoke in those terms. The high court affirmed the Court of Chancery's decision, explaining that "since the Act does not prohibit the members of an LLC from vesting exclusive subject matter jurisdiction in arbitration proceedings (or court enforcement of arbitration) in California to resolve disputes, the contractual forum selection provisions must govern."[49] The gravamen of the decision was thus that the contract controlled, but the decision used the language of subject matter jurisdiction to reach that result.

As this decision has explained, an arbitration provision does not deprive a court of subject matter jurisdiction in its strict sense. The language of *Elf Atochem* therefore prompted the authors of the leading treatise on Delaware LLCs to recommend taking its references to subject matter jurisdiction with a grain of salt. They suggest "reading *Elf Atochem* less expansively as a decision that simply . . . enforces a contractual 'forum selection clause,'"[50] and they argue that even "the DLLC Act's enhanced freedom of contract policy lacks sufficient vitality to alter the general rule that parties by agreement cannot confer subject matter jurisdiction on a court."[51] Once *Elf Atochem* is understood as holding that a court should decline to exercise its

---

[49] *Id.*

[50] Robert L. Symonds, Jr. & Matthew J. O'Toole, *Symonds & O'Toole on Delaware Limited Liability Companies* § 4.09[D][1] n.294 (2d. ed. 2019).

[51] *Id.*

subject matter jurisdiction when parties have agreed to an otherwise enforceable arbitration provision, the conflict disappears.

The same charitable interpretation can be given to subsequent Delaware decisions that followed *Elf Atochem* in referring to an arbitration provision as depriving the court of subject matter jurisdiction.[52] That is preferable to trying to explain how the loss of subject matter jurisdiction works.

One decision attempted that feat by reasoning that when parties have agreed to arbitrate, an adequate remedy exists at law in the form of the arbitration proceeding.[53] Although superficially attractive, that theory does not explain why other courts, like the federal courts or the Delaware Superior Court, dismiss claims in favor of arbitration. It also does not explain why the Court of Chancery still dismisses a case in favor of arbitration when a party only seeks equitable relief. Nor does it explain why the Court of Chancery would dismiss a case grounded on statutory jurisdiction.

---

[52] *See NAMA Hldgs., LLC v. Related World Mrkt. Ctr., LLC.* 922 A.2d 417, 429 (Del. Ch. 2007) (citing *Elf Atochem* and stating that "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate"); *see also Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008 (citing *Elf Atochem* and *NAMA* for the proposition that a valid arbitration provision divests the court of subject matter jurisdiction).

[53] *Dresser Indus., Inc. v. Global Indus. Techs., Inc.*, 1999 WL 413401, at *4 (Del. Ch. June 9, 1999) (positing that "this court will not 'accept jurisdiction over' claims that are properly committed to arbitration since in such circumstances arbitration is an adequate legal remedy") (citing *McMahon v. New Castle Assocs.*, 532 A.2d 601, 693 (Del. Ch. 1987); *see Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sep. 9, 2009); *Nash v. Dayton Super. Corp.*, 728 A.2d 59, 62 (Del. Ch. 1998).

More broadly, the adequate-remedy-at-law explanation does not track how the Court of Chancery evaluates whether it lacks jurisdiction because of the existence of an adequate remedy at law. When confronting that issue, the court examines the nature of the claims that the party has asserted and the remedies that the party seeks.[54] When determining whether an arbitration provision applies, the court simply determines whether the claim falls within the scope of the clause. The adequate-remedy-at-law explanation thus does not hold up. The better course is to accept that Rule 12(b)(1) can be used to ask a court to abstain from exercising the subject matter jurisdiction that it possesses, and the presence of an arbitration provision or forum selection clause provides a generally persuasive reason for abstention.

The prevailing trend outside of Delaware is to treat motions to dismiss in favor of arbitration as arising under Rule 12(b)(3), not Rule 12(b)(1).[55] A leading federal treatise explains that

> [t]hough such an agreement waives the parties' right to a federal forum and requires dismissal, that is due to the court's decision to enforce the

---

[54] *See McMahon*, 532 A.2d at 603.

[55] *See Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174–75 (1st Cir. 2021) (collecting cases which hold that Rule 12(b)(1) is the wrong mechanism to decide a motion to compel arbitration); *Grasty*, 599 Fed. Appx. at 597 ("An arbitration clause is a type of forum-selection clause. Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1)."); *Seldin*, 879 F.3d at 272 ("[A] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is not the appropriate mechanism to use to attempt to compel arbitration.") (citing *City of Benkelman v. Baseline Engineering Corp.*, 867 F.3d 875, 880–81 (8th Cir. 2017)); *Brown*, 2016 WL 8710474, at *5 ("Arbitration clauses are forum-selection clauses. Thus, in this this Circuit, motions to dismiss claims because the claims are subject to binding arbitration are properly made under Rule 12(b)(3)." (citation omitted)).

waiver and *surrender* its jurisdiction, not because of a *lack* of jurisdiction over the dispute. Accordingly, a motion seeking to enforce the agreement does not challenge the court's subject matter jurisdiction and cannot be brought under Rule 12(b)(1).[56]

Delaware need not follow that trend, as long as the more flexible role of a Rule 12(b)(1) motion is understood. The fact that parties have used Rule 12(b)(1) when invoking arbitration provisions does not mean that arbitration provisions deprive a court of subject matter jurisdiction.

### 3. Whether The Arbitration Provision Can Be Waived

As noted previously, the main reason why Upshot insists that an arbitration provision deprives the court of subject matter jurisdiction is because a defense based on subject matter jurisdiction cannot be waived. That principle is critical for Upshot's motion because Upshot invoked the Arbitration Provision eleven months into a summary advancement action, after Upshot lost on the merits, and after Upshot was held in contempt for failing to comply with the court's merits ruling.

Authorities on a party's ability to waive arbitration both speak to that issue and shed additional light on whether an arbitration provision deprives a court of subject matter jurisdiction. If it does, then courts should permit parties to raise arbitration provisions at any time, including on appeal. But if courts permit waiver, then an arbitration provision cannot deprive a court of subject matter jurisdiction, because lack of subject matter jurisdiction cannot be waived.

---

[56] 2 *Moore's*, *supra*, § 12.30[1].

The federal courts of appeals have held unanimously that a party can waive a right to arbitrate by engaging sufficiently in litigation.[57] In the *Morgan* case, the Supreme Court of the United States recently reaffirmed that proposition.[58]

---

[57] *E.g., Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir. 1982) ("In sum, there is no question but that the court had the power to find a waiver [of an arbitration provision] on the facts before it."); *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) ("In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, we consider the following three factors . . . ."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007) ("[O]ur Court has long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator . . . ."); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) ("A party may waive its right to insist on arbitration if the party so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." (quotation omitted)); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) ("Although waiver of arbitration is a disfavored finding, waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."(quotation omitted)); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding judicial conduct waiver because movant's failed to raise arbitration until its motion to vacate a default judgment); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("[A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."); *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (holding a party may waive its right to arbitrate by engaging in litigation, including through extensive discovery); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023) (finding waiver satisfied when choosing to litigate in federal court rather than engage in arbitration); *BOSCA, Inc. v. Bd. Of Cty. Comm'rs*, 853 F.3d 1165, 1170 (10th Cir. 2017) ("We have recognized two forms of waiver, . . . (2) when a party's conduct in litigation forecloses its right to arbitrate."); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203 (11th Cir. 2011) ("The invocation of the judicial process ordinarily establishes a waiver of the defendant's right to compel arbitration . . . ."); *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (D.C. Cir. 1987) ([T]his court held that one example of conduct inconsistent with the right to arbitrate is active participation in a lawsuit.") (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)).

[58] *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

The *Morgan* decision addressed an employee's suit for breach of an employment agreement that contained an arbitration provision. The employer initially defended the case as if no arbitration provision existed. The employer moved to dismiss the case without invoking the arbitration provision. When that motion was denied, the employer answered the complaint and raised fourteen affirmative defenses, none of which mentioned the arbitration provision. The employer subsequently negotiated a schedule for the litigation and engaged in mediation. Then, eight months later, the employer moved to compel arbitration. The district court denied the motion, but the United States Court of Appeals for the Eighth Circuit sent the case to arbitration.

The Supreme Court of the United States granted certiorari and reversed. The Supreme Court noted that all of the federal appellate courts permitted a party to waive an arbitration provision by engaging in litigation. The Supreme Court also noted that all but two of the circuits required that a plaintiff show prejudice to establish that a defendant had waived its right to arbitrate, even though prejudice is not generally required for waiver. The circuit courts consistently justified requiring a showing of prejudice on the theory that the FAA had established a "policy favoring arbitration."[59]

In *Morgan*, the Supreme Court of the United States explained that the federal policy favoring arbitration "is merely an acknowledgment of the FAA's commitment

---

[59] *Id.* at 414.

to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."[60] The policy exists "to make arbitration agreements as enforceable as other contracts, but not more so."[61] It was thus error for the circuit courts to expand that policy to create procedural rules that favored arbitration. The Supreme Court vacated the Court of Appeals' decision and remanded the case so that the waiver issue could be analyzed anew, without any requirement to show prejudice. The resulting inquiry would turn solely on the employer's conduct and whether, by engaging in the litigation, the employer "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right."[62]

Delaware cases likewise permit parties to waive their right to arbitrate.[63] While serving as a Vice Chancellor, Justice Jacobs wrote that "a waiver of arbitration will be found if the party seeking arbitration has 'actively participated in a lawsuit or taken other action inconsistent with the right to arbitration.'"[64] The defendant had included the arbitration provision as an affirmative defense in its answer, but chose

---

[60] *Id.* at 418 (quotation omitted).

[61] *Id.* (quotation omitted).

[62] *Id.* at 419.

[63] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1260 n.39 (Del. Ch. 2004) ("[A] party may waive its right to arbitration . . . .").

[64] *Dorsey v. Nationwide Gen. Ins.*, 1989 WL 102493, at *1 (Del. Ch. Sep. 8, 1989) (quoting *Falcon Steel Co. v. Weber Eng'g Co., Inc.,* 517 A.2d 281, 288 (Del. Ch. 1986).

to engage in discovery for years. [65] Justice Jacobs held that under those circumstances, the right to arbitrate had been waived.[66]

A party like Upshot can waive its right to arbitrate by engaging sufficiently in litigation. That also means that an arbitration provision cannot deprive a court of subject matter jurisdiction, because a lack of subject matter jurisdiction cannot be waived.

### 4. Who Decides Whether The Arbitration Provision Has Been Waived?

Holding that the Arbitration Provision can be waived does not enable the court to jump into analyzing whether the provision has been waived. It requires analyzing whether the arbitrator or the court decides that issue.

In the abstract, disputes over arbitrability can encompass "every condition or requirement that must be met in order for an arbitration to go forward."[67]

- Arbitrability may turn on whether the domestic law of a particular sovereign permits an issue to be arbitrated.[68] For civil claims involving private litigants

---

[65] *Id.*

[66] *Accord Wilshire Rest. Gp, Inc. v. Ramada, Inc.*, 1990 WL 195910, at *3 (Del. Ch. Dec. 5, 1990).

[67] George A. Bermann, *The "Gateway" Problem in International Commercial Arbitration*, 37 Yale J. Int'l L. 1, 10 (2012).

[68] *See* George A. Bermann, *Arbitrability Trouble*, 23 Am. Rev. Int'l Arb. 367, 371 (2012) ("[A] claim or dispute is 'non-arbitrable' within a given legal system if the system's legislature or, less commonly, the system's courts acting on their own determine that its adjudication is reserved, as a matter of law, to the courts of that system. This represents what may be called arbitrability *stricto sensu*.").

in the United States, Section 2 of the FAA effectively eliminates concerns about whether a dispute may not be arbitrable because of an issue of domestic law.

- Arbitrability may turn on whether an arbitration agreement was ever formed.[69]

- Arbitrability may turn on whether, even though the arbitration agreement was formed, the agreement is nevertheless unenforceable due to fraud, duress, or unconscionability.[70]

- Arbitrability may turn on whether the controversy falls within the scope of an arbitration agreement.[71]

- Arbitrability may turn on whether a party complies with the procedural requirements necessary to arbitrate a dispute.[72]

Judicial decisions group these issues into the categories of substantive arbitrability and procedural arbitrability. Substantive arbitrability encompasses gateway issues that are for a court to decide, such as the scope, validity, and enforceability of an arbitration agreement, whether it encompasses the controversy in question,[73] and

---

[69] *See, e.g., China Minmetals Mat'ls Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 277 (3d Cir. 2003); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590 (7th Cir. 2001).

[70] *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 425 (1967).

[71] *See, e.g., Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532–33 (3d Cir. 2005).

[72] See, e.g., *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs.*, 623 F.3d 476, 477 (7th Cir. 2010); *Shopman's Local 493 v. EFCO Corp.*, 359 F.3d 954, 956 (8th Cir. 2004).

[73] *See, e.g., Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."); *Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78, 82 (Del. 2013) ("Issues of substantive arbitrability are gateway

"whether the parties are bound by a given arbitration clause."[74] Procedural arbitrability concerns "whether the parties have complied with the terms of an arbitration provision."[75] Examples include "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met."[76] Issues of procedural arbitrability are for the arbitrator to decide.[77] Normally a court decides whether an issue is substantive or procedural, but

---

questions relating to the scope of an arbitration provision and its applicability to a given dispute. . . .") (cleaned up); *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012) ("Substantive arbitrability involves, among other things, the applicability of an arbitration clause, the scope of an arbitration provision, and whether an arbitration clause is valid and enforceable."); David Horton, *Pirate Arbitration*, 106 Minn. L. Rev. 2111, 2124 n.103 (2021) [hereinafter Horton, *Pirate Arbitration*] ("[C]ourts presumptively decide 'substantive arbitrability': whether a dispute falls within the scope of a valid arbitration clause").

[74] *Howsam*, 537 U.S. at 84; *see also Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, 2011 WL 1348438, at *15 (Del. Ch. Apr. 8, 2011) (identifying "two categories of disputes where we presume that courts rather than arbitrators should resolve the gateway dispute: (1) disputes about whether the parties are bound by a given arbitration clause; and (2) disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" (cleaned up)) (citing *Kristian v. Comcast Corp.*, 446 F.3d 25, 39 (1st Cir. 2006)).

[75] *Viacom*, 72 A.3d at 82 (cleaned up).

[76] *Id.* (quoting *Howsam*, 537 U.S. at 85); *see also* Horton, *Pirate Arbitration*, *supra*, at 2124–25 n.103 ("Arbitrators hear 'procedural arbitrability,' which encompasses topics that are likely to arise in arbitration, such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." (cleaned up)).

[77] *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 751 (Del. Ch. 2023).

parties can delegate that question to an arbitrator through a "delegation clause" or a "delegation agreement."[78]

### a. Is A Judicial Conduct Waiver Substantive Or Procedural?

The who-decides inquiry starts by examining whether a judicial conduct waiver is an issue of substantive or procedural arbitrability. If it is procedural, then it is for the arbitrator to decide.

Extant precedent holds overwhelmingly that a judicial conduct waiver is substantive, not procedural. The eight federal courts of appeal that have considered the issue have decided in favor of substantive arbitrability.[79] The highest courts in Alabama, Alaska, Colorado, the District of Columbia, Florida, Georgia, Iowa,

---

[78] *See, e.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration.").

[79] *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 11 (1st Cir. 2005) (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 81 (2d Cir. 2017) (holding that judicial conduct waiver is an issue for the court); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007) (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Gp., Ltd.*, 999 F.3d 257, 265 (5th Cir. 2021) (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation), *cert. denied*, 142 S. Ct. 2752 (2022); *JPD, Inc. v. Chronimed Hldgs., Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) (holding that judicial conduct waiver is an issue for the court without analyzing whether there was a delegation); *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 856 (8th Cir. 2021) (holding that judicial conduct waiver is an issue for the court without analyzing whether there was a delegation); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008) (holding that judicial conduct waiver is an issue for the court without analyzing whether there was a delegation); *Grigsby & Asscs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (holding that judicial conduct waiver is an issue for the court without analyzing whether there was a delegation).

Kentucky, Maine, Minnesota, Montana, Nebraska, Nevada, New Hampshire, South

Dakota, and Texas agree,[80] as do intermediate appellate courts in California, Hawaii,

---

[80] *See Ocwen Loan Serv., LLC v. Washington,* 939 So.2d 6, 11–14 (Ala. 2006) (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation); *Hudson v. Citibank (S. D.) NA*, 387 P.3d 42, 47 (Alaska 2016) (holding that federal law applies to judicial conduct waiver, thus incorporating precedent from the Court of Appeals for the Ninth Circuit); *Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 233 P.3d 688, 695 (Colo. 2010) (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation); *Hossain v. JMU Props., LLC*, 147 A.3d 816, 821–23 (D.C. 2016) (holding that judicial conduct waiver is an issue for the court without analyzing whether there was a delegation); *Fla. Educ. Ass'n/United v. Sachs*, 650 So. 2d 29, 30 (Fla. 1995) (quashing the lower court decision to permit the court to consider the issue of waiver but not discussing delegation); *Brown v. RAC Acceptance E., LLC*, 809 S.E.2d 801, 805 (Ga. 2018) (holding that judicial conduct waiver is generally an issue for the court, then analyzing delegation); *Pa. Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 813 (Iowa 2002) (noting that judicial conduct waiver is an issue for the courts without analyzing delegation); *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 551 (Ky. 2008) (holding that judicial conduct waiver is generally an issue for the court, then acknowledging and leaving open the question of delegation); *Macomber v. MacQuinn-Tweedie*, 834 A.2d 131, 137 (Me. 2003) (holding that judicial conduct waiver question is for the court without analyzing delegation of waiver); *Bros. Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 428 (Minn. 1980) (holding that judicial conduct waiver is a question for the court without analyzing delegation); *Peeler v. Rocky Mountain Log Homes Can., Inc.*, 431 P.3d 911, 922 (Mont. 2018) (holding that judicial conduct waiver is a question for the court then analyzing delegation); *Good Samaritan Coffee Co. v. LaRue Distrib., Inc.*, 748 N.W.2d 367, 373–74 (Neb. 2008) (holding that judicial conduct waiver is a question for the court, then analyzing delegation), *overruled on other grounds by Kingery Constr. Co. v. 6135 O St. Car Wash, LLC*, 979 N.W.2d 762, 770 (Neb. 2022) (rejecting pre-*Morgan* rule that a judicial conduct waiver under the FAA requires a showing of prejudice); *Principal Invs. v. Harrison*, 366 P.3d 688, 695 (Nev. 2016) (holding that waiver is a question of fact for the trial court to decide, then analyzing delegation); *Babcock v. Sol Corp. of Maine*, 386 A.2d 1259, 1261 (N.H. 1978) (noting that waiver is a question of fact for the trial court to decide without analyzing delegation); *Tjeerdsma v. Glob. Steel Bldgs., Inc.*, 466 N.W.2d 643, 645 (S.D. 1991) (holding that judicial conduct waiver is a question for the court without analyzing delegation); *Perry Homes v. Cull*, 258 S.W.3d 580, 588–89 (Tex. 2008) (holding that judicial conduct waiver is a question for the court without analyzing delegation); *Williams v. Tucker*, 801 S.E.2d 273, 278 (W. Va. 2017) (holding that the judicial conduct waiver question is for the court, then analyzing delegation).

Illinois, Maryland, Massachusetts, Michigan, Missouri, New York, North Carolina, Ohio, Washington, and West Virginia.[81] Only courts in Kansas and Oregon disagree.[82]

---

[81] *Hong v. CJ CGV Am. Hldgs., Inc.*, 166 Cal. Rptr. 3d 100, 111–14 (Cal. Ct. App. 2013) (holding that judicial conduct waiver is an issue for the court without discussing delegation); *Cassedy v. Hofmann*, 153 So. 3d 938, 942 (Fla. Dist. Ct. App. 2014) (holding that judicial conduct waiver is an issue for the court without discussing delegation); *Cty. of Hawaii v. Unidev, LLC*, 289 P.3d 1014, 1038 (Haw. Ct. App. 2012) (holding that judicial conduct waiver is an issue for the court without discussing delegation), *opinion aff'd in part, vacated in part*, 301 P.3d 588, 593 n.10 (Haw. 2013), *as corrected* (July 24, 2013) (noting that neither party appealed the question of judicial conduct waiver); *Ford Motor Credit Co. v. Cornfield*, 918 N.E.2d 1140, 1154 (Ill. App. Ct. 2009) (holding that judicial conduct waiver is an issue for the court, then analyzing delegation); *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 220 A.3d 411, 422 (Md. Ct. Spec. App. 2019) (acknowledging the longstanding holding that judicial conduct waiver is a question for the courts without analyzing delegation); *Kettle Black of MA, LLC v. Commonwealth Pain Mgmt. Connection, LLC.*, 189 N.E.3d 1257, 1263–64 (Mass. App. Ct. 2022) (holding that judicial conduct waiver is an issue for the court, then analyzing delegation) (citing *Martin v. Norwood*, 395 Mass. 159, 162, 478 N.E.2d 955 (1985)); *SCA Servs., Inc. v. Gen. Mill Supply Co.*, 341 N.W.2d 480, 482–83 (Mich. Ct. App. 1983) (holding that judicial conduct waiver is an issue for the court without analyzing delegation); *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 463 (Mo. Ct. App. 2018) (holding judicial conduct waiver to be a question for the court, then analyzing the delegation question); *Cusimano v. Schnurr*, 991 N.Y.S.2d 400, 405 (App. Div. 2014) (holding that judicial conduct waiver is a question for the court not an arbitrator), *rev'd on other grounds*, 44 N.E.3d 212 (N.Y. 2015) (holding that the intermediate appellate court should have found applicant to have waived arbitration); *Barnhouse v. Am. Exp. Fin. Advisors, Inc.*, 566 S.E.2d 130, 131–32 (N.C. Ct. App. 2002) (holding that the waiver question is for the court without analyzing delegation); *Westlake Servs., LLC v. Chandler*, --- N.E.3d ---, 2023 WL 6632850, at *9 (Ohio Ct. App. Oct. 12, 2023) (holding that judicial conduct waiver is an issue for the court then analyzing delegation); *River House Dev. Inc. v. Integrus Architecture, P.S.*, 272 P.3d 289, 297 (Wash. Ct. App. 2012) (holding that the waiver question is for the court without analyzing delegation).

[82] *See Portfolio Recovery Assocs., LLC v. Dixon*, 366 P.3d 245, 251 (Kan. Ct. App. 2016) (relying on the United States Supreme Court's opinion in *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25 (2014), to hold that an arbitrator must decide the judicial conduct waiver question under federal law); *Livingston v. Metro.*

Decisions advance multiple reasons for holding that a court should decide whether a judicial conduct waiver has occurred. For starters, courts traditionally decided whether a judicial conduct waiver had occurred. The law became unsettled after the Supreme Court of the United States issued its decisions in *Howsam* and *BG Group*, because some read those decisions as holding that all waiver issues are procedural questions for the arbitrator.[83] But neither decision involved a judicial conduct waiver.[84] Having courts rule on judicial conduct waivers accords with precedent.

Second, courts have a comparative advantage when evaluating a judicial conduct waiver.[85] The sufficiency of a waiver turns on court procedures, and judges

---

*Pediatrics, LLC*, 227 P.3d 796, 802–03 (Or. Ct. App. 2010) (holding that the question of waiver is one for the arbitrator), *accord Thornburgh Resort Co., LLC v. Loyal Land, LLC*, 385 P.3d 1116, 1118 (Or. Ct. App. 2016) (applying the holding in *Livingston* to judicial conduct waiver and deciding the question is one for an arbitrator).

[83] *See BG Group*, 572 U.S. at 35 ("These procedural matters include claims of 'waiver, delay, or a like defense to arbitrability.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, (1983))); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting that "the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability'" (quoting *Moses H. Cone*, 460 U.S. at 25).

[84] *See BG Group*, 572 U.S. at 35 ("The provision before us is of the latter, procedural, variety."); *Howsam*, 537 U.S. at 85 (holding time limit in rule promulgated by National Association of Securities Dealers raised issue of procedural rather than substantive arbitrability).

[85] *E.g.*, *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. Appx. 462, 464 (5th Cir. 2004) (explaining that judge has the expertise to rule on a judicial conduct waiver); *Jones Motor Co.*, 671 F.2d at 43 (same).

should be more familiar with those.[86] Judges also are well positioned to assess when belated reliance on an arbitration provision smacks of forum shopping.[87]

Third, allowing judges to decide the issue promotes judicial economy. "[S]ending waiver claims to the arbitrator would be exceptionally inefficient."[88] The judge presiding over the case has seen the facts first hand, which gives the judge an inherent advantage. The drafters of the Revised Uniform Arbitration Act similarly recognized that "[i]t is also a matter of judicial economy to require that a party, who pursues an action in a court proceeding but later claims arbitrability, be held to a decision of the court on waiver."[89]

Fourth, having courts to address judicial conduct waivers respects the court's power to control the proceedings before it. "Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel

---

[86] *E.g., Marie*, 402 F.3d at 13 (noting that judicial conduct waiver "heavily implicates judicial procedures" (cleaned up)); *see Unidev*, 289 P.3d at 1038 ("[T]he procedural question whether there was a litigation-based waiver is unrelated to the merits of the dispute, which the parties intended to be decided by an arbitrator."); *see* Revised Uniform Arbitration Act § 6 cmt. 5 (Unif. L. Comm'n 2000) ("Allowing the court to decide this issue of arbitrability comports with the separability doctrine because in most instances waiver concerns only the arbitration clause itself and not an attack on the underlying contract.")

[87] *E.g., Ehleiter*, 482 F.3d at 218 ("[H]aving been directly involved in the entire course of the legal proceedings, [are] better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop."); *Marie*, 402 F.3d at 13 ("Judges are well-trained to recognize abusive forum shopping.").

[88] *Marie*, 402 F.3d at 13–14; *accord Jones Motor Co.*, 671 F.2d at 43 ("to hold that courts cannot find waiver would waste scarce judicial time and effort.").

[89] Revised Uniform Arbitration Act § 6 cmt. 5 (Unif. L. Comm'n 2000).

arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings."[90] Allowing judges "to determine the legal consequences of prior judicial proceedings" recognizes that judges have "inherent authority to control their dockets."[91]

Finally, there is the issue of fairness. When a case has advanced so far that a judicial conduct waiver may have occurred, then it is unfair to force the parties to arbitrate over that issue.[92] Doing so "would effectively allow a party sensing an adverse court decision a second chance in another forum."[93]

In Delaware, virtually all of the decisions to consider a judicial conduct waiver have jumped over the who-decides question and treated the issue as one for the

---

[90] *Marie*, 402 F.3d at 13; *accord Jones Motor Co.*, 671 F.2d at 43 ("[I]t is important that judges remain free to control the course of proceedings before them and to correct any abuse of those proceedings by, for example, denying a belated motion for arbitration.").

[91] *Macomber v. MacQuinn-Tweedie*, 834 A.2d 131, 137 (Me. 2003).

[92] *Jones Motor Co.*, 671 F.2d at 43.

[93] *Id.*

court. [94] The one exception is my decision in *Meyers*. [95] There, after litigating advancement and indemnification issues for approximately two years, the plaintiffs amended their complaint to add new claims under their employment agreements. Those agreements contained broad arbitration provisions, and the defendants moved to dismiss the new claims in favor of arbitration. The plaintiffs argued that the defendants had waived their right to arbitrate because the case had been going on for two years, but that argument was barely colorable when the plaintiffs had only just added the new claims. It also seemed readily apparent that the new claims fell within the scope of the arbitration provisions. No one briefed the difference between a procedural waiver and a judicial conduct waiver, and I was unaware of the authorities from other jurisdictions that treated judicial conduct waivers differently. The parties only referred to Delaware authorities that treated waiver as an issue of procedural

---

[94] *Menn v. Conmed Corp.*, 2019 WL 925848, at *2 (Del. Ch. Feb. 25, 2019); *Align Strategic P'rs LLC v. Moesser*, 2016 WL 791261, at *5 (Del. Ch. Feb. 26, 2016); *Delta & Pine Land Co. v. Monsanto Co.*, 2006 WL 1510417, at *5 (Del. Ch. May 24, 2006); *The Town of Smyrna v. Kent Cty. Levy Ct.*, 2004 WL 2671745, at *3 (Del. Ch. Nov. 9, 2004); *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1260–62 (Del. Ch. 2004); *Ballenger v. Applied Digit. Sols., Inc.*, 2002 WL 749162, at *7–8 (Del. Ch. Apr. 24, 2002); *Russykevicz v. State Farm Mut. Auto. Ins. Co.*, 1994 WL 369519, at *2 (Del. Ch. June 29, 1994); *Wilshire Rest. Gp*, 1990 WL 195910, at *3; *Dorsey v. Nationwide Gen. Ins. Co.*, 1989 WL 102493, at *2 (Del. Ch. Sept. 8, 1989); *James Julian, Inc. v. Raytheon Serv. Co.*, 424 A.2d 665, 668 (Del. Ch. 1980); *W. R. Ferguson, Inc. v. William A. Berbusse, Jr., Inc.*, 216 A.2d 876, 878 (Del. Super. 1966).

[95] *Meyers v. Quiz-Dia LLC.*, 2016 WL 7048783 (Del. Ch. 2016).

arbitrability. Taking those authorities at face value, I happily deferred to the arbitrator to address the waiver question.[96]

Here, Gandhi has briefed the distinction between a procedural waiver and a judicial conduct waiver and introduced authorities from other jurisdictions that treat a judicial conduct waiver as an issue for the court. The doctrine of *stare decisis* should not mean that a court is shackled by a precedent in which the parties did not advance a critical argument or identify dispositive authority.[97] To the extent I implied in *Meyers* that a judicial conduct waiver is an issue of procedural arbitrability, that was

---

[96] *Id.* (citing *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 762 (Del. 1998)).

[97] *E.g.*, *Gatz Props., LLC v. Auriga Cap. Corp.*, 59 A.3d 1206, 1218 (Del. 2012) (holding that trial court's ruling on issue that parties did not contest was *dictum* without *stare decisis* effect); *id.* at 1219 n.70 (explaining that trial court incorrectly relied on *William Penn P'ship v. Saliba*, 13 A.3d 749 (Del. 2011), for a proposition that the parties in *Saliba* had not contested; noting that when parties concede points "we do not look behind their in-court representations"). *But see Holifield v. XRI Inv. Hldgs. LLC*, --- A.3d ---, 2023 WL 5761367, at *24–29 (Del. Sept. 7, 2023) (treating ruling in *CompoSecure, L.L.C. v. CardUX, LLC (CompoSecure II)*, 206 A.3d 807 (Del. 2018), as *stare decisis* on the issue of incurable contractual voidness). In *CompoSecure II*, the parties had not argued incurable contractual voidness at the trial level and did not brief incurable contractual voidness on appeal. One of the justices raised the issue *sua sponte* at oral argument and asked whether the use of the word "void" in a provision in the contract at issue was a "game-changer." *See CompoSecure II*, 206 A.3d at 816. Appellee's counsel agreed that it would be a game-changer, thereby accepting the premise that a contract's use of the term "void" carried the full implications of a common law determination that an act was void *ab initio*. When the justices issued the *CompoSecure II* decision, they "reluctantly" noted their agreement with the parties and introduced the concept of incurable contractual voidness. *See XRI Inv. Hldgs. LLC v. Holifield,* 283 A.3d 581, 643 (Del. Ch. (describing proceedings at trial level and on appeal), *aff'd in part, rev'd in part, and remanded*, 2023 WL 5761367 (Del. Sept. 7, 2023).

39

incorrect. Whether a judicial conduct waiver has occurred is an issue of substantive arbitrability for the court to decide.

### b. The Delegation Question

As noted, parties can alter the outcome of the "who decides" question by delegating to the arbitrator the power to decide an issue of substantive arbitrability. An effective delegation agreement must provide "clear and unmistakable evidence" of the parties' intent to delegate the issue to the arbitrator."[98] The Delaware Supreme Court has held that when parties agree to a broad arbitration provision and incorporate a set of arbitral rules that empower an arbitrator to decide issues of substantive arbitrability, *i.e.*, a set of jurisdictional arbitral rules, then "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[99] The Arbitration Provision in this case satisfies that standard. It calls for arbitration before Judicial Arbitration and Mediation Service Inc. ("JAMS") "in accordance with its then existing arbitration rules or procedures regarding commercial or business disputes."[100] Those rules state that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."[101]

---

[98] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

[99] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

[100] Dkt. 72 Ex. 1 § 15.15(a).

[101] Dkt. 73 ¶ 18 n.4.

40

Whether the incorporation by reference of arbitral rules is sufficient to delegate the issue of a judicial conduct waiver to the arbitrator is a separate question. The United States Courts of Appeals for the First, Third, and Fifth Circuits have held that without something more explicit than a reference to a set of arbitral rules, the court decides whether a judicial conduct waiver has occurred.[102] The highest courts of Colorado, Georgia, Montana, Nebraska, Nevada, and West Virginia agree that something more is required, although they disagree about what is sufficient.[103]

---

[102] *Marie*, 402 F.3d at 14–15 (holding that judicial conduct waiver is an issue for the court, then analyzing whether there was a delegation relying on the high standard for delegation and the enumerated list of delegated issues to find that the issue of judicial conduct waiver was not delegated); *Ehleiter*, 482 F.3d at 219 (holding summarily that the parties' agreement failed to meet the "clear and unmistakable evidence" standard); *Int'l Energy Ventures*, 999 F.3d at 264–265 (holding that reference to the AAA rules sufficient to delegate issues of substantive arbitrability but not the issue of judicial conduct waiver), *cert. denied*, 142 S. Ct. 2752 (2022).

[103] *See Radil*, 233 P.3d at 693 (presuming that courts deal with issues related to the scope of arbitration provisions, then finding that judicial conduct waiver was outside the scope of the arbitration provision, and thus not properly delegated); *Peeler*, 431 P.3d at 925 (finding that reference to the AAA rules without reference to threshold issues like enforceability or application was insufficient to delegate the judicial conduct waiver issue); *Good Samaritan Coffee*, 748 N.W.2d at 375 (noting that parties may delegate the issue of judicial conduct waiver but that reference to the arbitration rules of the Green Coffee Association did not constitute clear and unmistakable evidence), *overruled on other grounds by Kingery Constr.*, 979 N.W.2d at 770 (rejecting pre-*Morgan* rule that a judicial conduct waiver under the FAA requires a showing of prejudice); *Principal Invs.*, 366 P.3d at 695–96 (relying on the "silence or ambiguity rule" to hold that a delegation agreement including issues related to validity, enforceability or scope did not include judicial conduct waiver); *Williams*, 801 S.E.2d at 278 n.4 (noting "the absence of a 'clear and unmistakable' delegation provision evincing that the parties agreed to arbitrate arbitrability"); *see also Brown*, 809 S.E.2d at 805 (finding a broad delegation agreement contained sufficiently clear and unmistakable language to delegate the judicial conduct waiver issue).

Intermediate appellate courts in Illinois, Massachusetts, and Ohio also require more than a reference to a set of jurisdictional arbitral rules.[104] Only the United States Court of Appeals for the Tenth Circuit, the Supreme Court of Alabama, and the Court of Appeals of Missouri hold that a reference to a set of arbitral rules is sufficient to empower the arbitrator to decide whether a judicial conduct waiver has occurred.[105]

The majority rule rests on the principle that silence in a set of arbitral rules about who decides a judicial conduct waiver does not provide sufficiently clear and unmistakable evidence of the parties' intent to delegate that issue to the arbitrator.[106]

---

[104] *Ford Motor Credit*, 918 N.E.2d at 1154 (holding finding that a general delegation of the arbitrability question does not include judicial conduct waiver); *Kettle Black*, 189 N.E.3d at 1264–65 (holding that reference to the AAA rules was insufficient to delegate the judicial conduct waiver issue); *Westlake Servs.*, --- N.E.3d ---, 2023 WL 6632850, at *9–10 (questioning whether a judicial conduct waiver issue could be delegated but finding that the incorporation of the AAA rules or "any other national or regional arbitration organization" was insufficient regardless).

[105] *Goldgroup Res., Inc. v. DynaResource de Mex., S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (finding reference to the AAA rules sufficient to delegate the arbitrability question, including judicial conduct waiver); *Fed. Ins. Co. v. Reedstrom*, 197 So. 3d 971, 976 (Ala. 2015) ("[A]n arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision." (quotations omitted)); *Latenser*, 549 S.W.3d at 463 (finding that reference to the AAA rules was sufficient to delegate the judicial conduct waiver issue).

[106] *E.g.*, *Int'l Energy Ventures.*, 999 F.3d at 264 (holding that a reference to a set of arbitral rules can encompass questions of substantive arbitrability identified in the rules but cannot address a judicial conduct waiver where "the rules do not expressly give arbitrators the power to resolve questions of waiver through litigation"); *Westlake Servs.*, 2023 WL 6632850, at *10 (declining to permit an arbitrator to decide whether a juridical conduct waiver occurred after noting that "[t]he AAA rules make no mention of waiver by litigation conduct"); *see also Marie*, 402 F.3d at 14 (finding that a reference to a set of arbitral rules did not encompass a

The majority rule also recognizes that there are numerous policy reasons for having a court decide whether a judicial conduct waiver has occurred, so a specific reference should be necessary to delegate that issue to an arbitrator.

The decisions applying the majority rule are persuasive. The Arbitration Provision in this case is insufficient to empower the arbitrator to decide whether a judicial conduct waiver has occurred.

### c. A Non-Delegable Issue

Assuming for the sake of argument that the parties had specified that the arbitrator would decide whether a judicial conduct waiver had occurred, the attempted delegation would be contrary to the FAA.

Section 3 of the FAA provides a court should stay a court proceeding in favor of arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration."[107] For purpose of Section 3, a "default" has generally been viewed by courts as including a "waiver."[108] If a party has chosen to engage in significant litigation efforts rather than pursue its right to arbitrate, then the party is "in default

---

judicial conduct waiver where there were "no references to waiver or similar terms anywhere in the arbitration agreement").

[107] 9 U.S.C. § 3.

[108] See *Marie*, 402 F.3d at 13 (citing *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204–05 (4th Cir. 2004); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n. 17 (11th Cir. 2002); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001); *County of Middlesex v. Gevyn Constr. Corp.*, 450 F.2d 53, 56 n. 2 (1st Cir. 1971)).

in proceeding with such arbitration."[109] Under the FAA, a court determines whether to deny a stay because of a default in proceeding with arbitration. "This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the [judicial conduct] waiver issue themselves."[110]

Section 4 of the FAA dictates the same result. It provides that when a party seeks to compel another party to arbitrate, the court may order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ."[111] Under that provision, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."[112]

To be satisfied that the parties agreed to arbitrate, the court must determine that an arbitration agreement exists.[113] The Supreme Court of the United States recently underscored this point. Despite holding that a court must enforce a delegation agreement even if a court thought the argument for arbitrability was

---

[109] *Id.*

[110] *Id.*

[111] 9 U.S.C. § 4.

[112] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

[113] *MZM Constr. Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020); *accord Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 326 (3d Cir. 2022).

wholly groundless, the justices reiterated that a court must determine whether an arbitration agreement exists in the first place.

> This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence. To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.[114]

The arbitrator cannot rule on the existence of the arbitration agreement that gives rise to the arbitrator's authority. A court must therefore always address challenges to the existence of the arbitration agreement.[115]

Determining whether a judicial conduct waiver has occurred is "in effect, a determination of whether the agreement to arbitrate still exists; and, under the statute, that is a proper issue for the court."[116] An arbitration agreement cannot delegate the issue of a judicial conduct waiver to an arbitrator, because that issue asks whether an arbitration agreement exists in the first place. Assume two parties formally agree to waive an arbitration provision for a particular category of disputes, and they enter into a written contract that memorializes their agreement. If they subsequently disagree about whether a specific dispute falls within the waiver

---

[114] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citations omitted).

[115] *See Fairstead*, 288 A.3d. at 752–53 (collecting authorities).

[116] *Stauffer Constr. v. Bd. of Educ.*, 54 Md. App. 658, 668, 460 A.2d 609 (1983) (emphasis omitted).

agreement, a threshold question exists as to whether they have any agreement to arbitrate that dispute. Under Section 4 of the FAA, a court must decide that issue.

Of course, parties need not execute a formal agreement. A party may indicate through its conduct that it has waived an arbitration provision. If a dispute arises about whether the party's conduct waived the arbitration provision, the issue is the same as in the formal setting: a threshold question exists as to whether they have any agreement to arbitrate that dispute. That remains an issue that a court must determine.

When a plaintiff files an arbitrable claim in court, the plaintiff implicitly offers to litigate the claim rather than arbitrate it. When a court determines whether a judicial conduct waiver has occurred, a court assesses whether the defendant has sufficiently engaged in litigation such that the defendant has implicitly accepted the plaintiff's offer. A dispute over a judicial conduct waiver thus operates as a dispute over whether the parties have reached a new agreement to litigate the specific claims that the plaintiff filed. It is no longer clear whether there is an agreement to arbitrate those claims. A court must decide whether an agreement to arbitrate exists, meaning that a court must decide whether there has been a judicial conduct waiver.

Accordingly, whether a judicial conduct waiver has occurred is always an issue that a court must decide. It is not something that parties can delegate to an arbitrator, just as parties cannot delegate to the arbitrator the comparable question of whether an agreement to arbitrate exists.

46

Admittedly, such a conclusion departs from the majority rule.[117] Most courts have reasoned that a delegation agreement that is sufficiently clear and unmistakable could encompass a judicial conduct waiver.[118] Those decisions have not considered whether a judicial conduct waiver equates to whether the arbitration agreement exists in the first place.

---

[117] Only one court has reasoned similarly. *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 614 (S.D.N.Y. 2020) ("The Court concludes that parties cannot delegate to arbitrators the question of whether, under the judge-made principle of litigation-conduct waiver, a party is barred from asserting its right to arbitration."). Two others have questioned whether a judicial conduct waiver should be delegable. *See Int'l River Ctr. v. Johns-Manville Sales Corp.*, 861 So. 2d 139, 144 (La. 2003) (questioning whether a party should be able to delegate whether a judicial conduct waiver has occurred); *Kettle Black of MA, LLC v. Commonwealth Pain Mgmt. Connection, LLC.*, 189 N.E.3d 1257, 1263 (Mass. App. Ct. 2022) (same). One court has held that a judicial conduct waiver is for the court to decide without considering the delegation issue. *See Meyer v. Uber Techs., Inc.*, 868 F.3d at 81.

[118] *Marie*, 402 F.3d at 14–15 (requiring additional clarity to delegate the issue of judicial conduct waiver); *Ehleiter*, 482 F.3d at 219 (requiring additional clarity to delegate the issue of judicial conduct waiver); *Int'l Energy Ventures*, 999 F.3d at 264–265 (requiring additional clarity to delegate the issue of judicial conduct waiver), *cert. denied*, 142 S. Ct. 2752 (2022); *Brown*, 809 S.E.2d at 805 (finding a broad delegation agreement sufficient to manifest clear and unmistakable delegation of the judicial conduct waiver issue); *Peeler*, 431 P.3d at 925 (requiring additional clarity to delegate the issue of judicial conduct waiver); *Good Samaritan Coffee*, 748 N.W.2d at 375 (noting that parties may delegate the issue of judicial conduct waiver but that reference to the arbitration rules of the Green Coffee Association did not constitute clear and unmistakable evidence), *overruled on other grounds by Kingery Constr.*, 979 N.W.2d at 770 (rejecting pre-*Morgan* rule that a judicial conduct waiver under the FAA requires a showing of prejudice); *Principal Invs.*, 366 P.3d at 695–96 (relying on the "silence or ambiguity rule" to hold that a delegation agreement including issues related to validity, enforceability or scope did not include judicial conduct waiver); *Williams*, 801 S.E.2d 278 n.4 (noting "the absence of a 'clear and unmistakable' delegation provision evincing that the parties agreed to arbitrate arbitrability"); *Ford Motor Credit*, 918 N.E.2d at 1154 (analogizing to delegation of res judicata issues and finding that a general delegation of the arbitrability question does not include judicial conduct waiver).

47

### 5. Did A Judicial Conduct Waiver Occur?

With the who-decides question answered, the court can address whether a judicial conduct waiver occurred. A right to arbitrate can be waived "if the party seeking arbitration has actively participated in a lawsuit or taken other action inconsistent with its right to arbitrate."[119] Here, that standard is met.

Upshot delayed raising the Arbitration Provision for eleven months. Upshot answered the complaint without mentioning the Arbitration Provision, stipulated to a schedule for presenting a case-dispositive motion that did not mention arbitration, and briefed Gandhi's motion for summary judgment without mentioning the Arbitration Provision. The motion for summary judgment resulted in the issuance of the Advancement Order, which resolved Gandhi's right to obtain advancements on the merits. Upshot then failed to comply with the Advancement Order, and the court held Upshot in contempt. It was only after Gandhi filed a second motion for sanctions that Upshot raised the Arbitration Provision.

By taking these actions, Upshot did not act like a party intent on asserting a right to arbitrate. Upshot plainly knew about the Arbitration Provision, which appears in its own limited partnership agreement. Upshot chose to litigate.

To minimize the significance of its actions, Upshot strives to portray itself as a passive respondent. Upshot has been a respondent, but not a passive one. Upshot

---

[119] *Wilshire Rest. Gr.*, 1990 WL 195910, at *3; *see also Morgan*, 596 U.S. at 419 (waiver occurs where a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right").

filed an answer, briefed a motion for summary judgment, and briefed a motion for contempt before raising the Arbitration Provision.

Upshot also argues that courts have generally found waiver only when a party avails itself of the benefits of litigation, such as by taking discovery that is not typically available in arbitration.[120] Upshot points out that it did not take discovery, but that is because of the nature of the case. Advancement proceedings are summary and expedited. Parties do not typically take discovery, and the court generally resolves the case as a matter of law. For an advancement case, the failure to take discovery does not change the outcome.

Next, Upshot points to cases where courts sent litigants to arbitration after time periods ranging from four months to two-and-a-half years. None of those cases involved a summary proceeding. Upshot's eleven months did not take place in a non-expedited case, but rather in a summary advancement proceeding. Advancement actions are expedited by nature, and the Court of Chancery strives to resolve them in forty-five to ninety days so that the advancement right—if it exists—can fund the underlying litigation.[121]

---

[120] *Dorsey*, 1989 WL 102493, at \*2.

[121] *See Trascent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 110 (Del. 2016) (explaining that advancement proceedings should be summary and expedited); *Guidelines to Help Lawyers Practice in the Court of Chancery* § (C)(5)(c)(i) (updated Aug. 2021) ("Summary proceedings generally can be completed in 45–90 days.") [https://courts.delaware.gov/forms/download.aspx?id=99468].

Finally, Upshot argues that the court should not find waiver because Delaware has a strong public policy favoring arbitration. To be sure, there are Delaware cases that say that,[122] but those pronouncements generally echoed what was understood to be federal policy.[123] The United States Courts of Appeal made similar statements.[124] In *Morgan*, the Supreme Court of the United States rejected the contention that there was "an overriding federal policy favoring arbitration" and explained that "[t]he

---

[122] *E.g.*, *James Julian*, 424 A.2d at 668 ("There is a strong public policy favoring arbitration and, therefore, waiver is not to be lightly inferred."); *NAMA*, 922 A.2d at 429 ("Because the strong public policy in favor of arbitration embodied in federal law is given equal respect in this State . . . .").

[123] *See, e.g., Willie Gary*, 906 A.2d at 79 ("Delaware arbitration law mirrors federal law"); *Pettinaro.*, 408 A.2d 957 (citing federal policy favoring arbitration); *Action Drug Co. v. R. Baylin Co.*, 1989 WL 69394 (Del. Ch. June 19, 1989) (citing the Supreme Court of the United States to emphasize policy on arbitration provisions); *City of Wilmington v. Wilmington Firefighters Local 1590, Int'l Ass'n of Firefighters*, 385 A.2d 720, 724 (Del. 1978) (looking to federal forums for guidance on dealing with arbitration provisions in labor disputes).

[124] *E.g.*, *Carcich v. Rederi A/B Nordie*, 389 F. 2d 692, 696 (2d Cir. 1968) ("[T]here is an overriding federal policy favoring arbitration."); *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 83 (3d Cir. 2010) ("Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration."); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 470 (6th Cir. 2009) ("[T]he FAA manifests a liberal federal policy favoring arbitration agreements." (cleaned up)); *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967) ("The policy of the Federal Arbitration Act is to promote arbitration to accord with the intention of the parties and to ease court congestion."); *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1157 n.1 (9th Cir. 2012) ("The FAA declares a national policy favoring arbitration and supersedes state legislative attempts to undercut the enforceability of arbitration agreements." (cleaned up)); *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("If there is an arbitration agreement governing this dispute, it is governed by the Federal Arbitration Act which embodies a liberal federal policy favoring arbitration agreements."(cleaned up)).

federal policy is about treating arbitration contracts like all others, not about fostering arbitration."[125] The Court overruled the federal precedents that held there was a higher standard for waiving an arbitration provision because of a perceived federal policy to favor arbitration generally.[126]

The *Morgan* decision is binding for purposes of the FAA. Upshot's argument that the court should ignore its waiver of the Arbitration Provision on public policy grounds is no longer sound.[127]

---

[125] *Morgan*, 596 U.S. at 418 (2022).

[126] *Id.*

[127] Citing the Delaware Supreme Court's recent *Holifield* decision, Upshot argues that an arbitration provision in an alternative entity agreement should be given greater protection against waiver. *See Holifield*, 2023 WL 5761367, at *23. The *Holifield* decision doubled down on the concept of incurable contractual voidness. The case did not involve an arbitration provision, much less a judicial conduct waiver. It is possible that drafters could rely on *Holifield* to create a next-generation arbitration provision in an alternative entity's governing agreement that would rely on incurable contractual voidness. Such a provision might state that "any action taken to litigate a case that the arbitrator determines to be arbitrable is null and void." In *Holifield*, the Delaware Supreme Court held that clear language like "null and void," when present in a provision in an LLC agreement, rendered the covered conduct void *ab initio*, which in *Holifield* was sufficient to deprive this court of its power to enforce equitable defenses. The power to apply those defenses is part of this court's constitutional jurisdiction, vested in the court by the Constitution of 1792 and maintained by the Constitutions of 1831 and 1897. *See DuPont v. DuPont*, 85 A.2d 724, 727 (Del. 1951). For a case like this one, where the court's subject matter jurisdiction is statutory, it would be a lesser step to hold that designating litigation filings as "null and void" prevented those filings from having any effect. Under *Hollifield*, such a provision might deprive the court of subject matter jurisdiction in the strict sense and be non-waivable. The Arbitration Provision is not a next-generation provision, so the current law governing judicial conduct waivers applies.

Upshot has not pointed to any precedent in which a court permitted a party to invoke an arbitration provision after losing on the merits and being held in contempt. To permit a party to invoke an arbitration provision at that stage would be the ultimate do-over. From every perspective, Upshot waived its right to arbitrate.

## B.    The Rule 60(b) Motion

In addition to moving to dismiss this action in favor of arbitration, Upshot asks the court to vacate the Advancement Order and Contempt Order under Rule 60(b). That rule identifies grounds for relief from "a final judgment, order, or proceeding." Whether to grant relief under Rule 60(b) is a "discretionary matter which requires the Trial Judge to weigh the facts and circumstances of [the] case."[128]

Upshot relies on two of the grounds for relief identified in Rule 60(b). One is if "the judgment is void."[129] The other is a catchall for "any other reason justifying relief from the operation of the judgment."[130] Both arguments rely on the Arbitration Provision. Because Upshot has waived the Arbitration Provision, Upshot cannot rely on it for purposes of its Rule 60 motion.

## III.    CONCLUSION

By failing to raise the Arbitration Provision until late in this litigation, Upshot waived its right to arbitrate. Upshot's motion to dismiss under Rule 12(b)(1) is

---

[128] *Bachtle v. Bachtle*, 494 A.2d 1253, 1256 (Del. 1985).

[129] Ct. Ch. R. 60(b)(4).

[130] Ct. Ch. R. 60(b)(6).

DENIED. Without any ability to rely on the Arbitration Provision, Upshot's Rule 60(b) motion is DENIED.